THE STATE OF OHIO, APPELLEE, *v.* GRIFFIN, APPELLANT.

(Nos. C-77838 and C-780002—Decided January 3, 1979.)

Mr. *Simon L. Leis, Jr.,* prosecuting attorney, Mr. *Leonard Kirschner* and Mr. *William P. Whalen, Jr.,* for appellee.
Mr. *Ferd H. Kleinhaus,* for appellant.

*Per Curiam.* This cause came on to be heard upon the appeal from the Court of Common Pleas of Hamilton County.

Joseph Griffin, appellant herein, seeks reversal of his conviction of voluntary manslaughter in violation of R.C. 2903.03. His appeal under a tardy notice of appeal was consolidated with his appeal by leave. In addition to the single assignment of error filed by counsel, we consider, in the interest of fairness, three assignments of error filed *pro se* by appellant.

In appellant's counsel's assignment of error, the claim is that the conviction by the trial court sitting without a jury was not supported by sufficient evidence, because the proof of culpable mental state, being circumstantial, was irreconcilable with a reasonable theory of appellant's innocence. Appellant testified that the fatal knife wound was inflicted on his common-law wife purely by accident as he defended himself and struggled to get the knife away from her. He now claims that his conviction must be reversed under the standards set forth in *State* v. *Kulig* (1974), 37 Ohio St. 157 [66 O.O.2d 351], because his conviction was irreconcilable with his "reasonable theory of innocence."

If appellant's testimony was the only evidence before the trial court, the judgment could not stand. However, the state produced a neighbor who said that appellant came to her saying, "I think I did it, killed her this time," and later, "I just had to do it. I've had this on my mind. I've been drinking, tried to get it off, and I just had to do it." The evidence further disclosed that, while appellant had minor knife cuts on his hands, the decedent had multiple wounds on her neck, right cheek, right side of her chest, left arm and both hands. The latter were characterized as "defense marks." All of this constitutes circumstantial evidence that appellant knowingly caused the death. We hold that the evidence *sub judice* was sufficient to support the guilty finding and the judgment.

The *Kulig* standard is that when an essential element is proven by circumstantial evidence, the finding of guilty cannot be supported unless the circumstantial evidence is "irreconcilable with any reasonable theory of the accused's innocence." The standard is difficult to apply because the phrase "any reasonable theory of the accused's innocence" is not defined. The following cases illustrate the difficulty: *State* v. *Graven* (1978), 54 Ohio St. 2d 114 [8 O.O. 3d 113]; *State* v. *Nabozny* (1978), 54 Ohio St. 2d 195 [8 O.O.3d 181]; *Cincinnati* v. *Engram* (Sept. 27, 1978), Hamilton App. No. C-77778, unreported.

We take it *Kulig* does not stand for the proposition that whenever the defendant offers any theory of innocence whatsoever, even if reasonable, he must be discharged *ipso facto*. For instance, the prosecution will almost inevitably have to resort to circumstantial evidence to prove the defendant's mental state (purpose, knowledge, recklessness, negligence) because the defendant hardly ever articulates his mental state. It is fair to say that the overwhelming number of defendants who testify at trial deny they had the requisite intent, awareness, disregard of failure of due care. Such testimony, standing by itself, raises a factual conflict to be resolved by the trier of fact, and the mere existence of the conflict has never been the cause of a mandatory discharge. On the other hand, *Kulig* stands for the principle that situations may arise when the circumstantial evidence is so attenuated that reasonable minds would never find that the desired fact (an essential element, for instance) has been established beyond a reasonable doubt.

We have in our criminal jurisprudence two abiding, immutable principles: an accused is presumed to be innocent, and this presumption can be overcome only by proof establishing guilt beyond a reasonable doubt. Further, proof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence. All three classes have equal probative value, and circumstantial evidence has no less value than the others. 1A Wigmore, Evidence (Tillers Rev. 1983) 944, Section 24 *et seq.*

Circumstantial evidence is sometimes defined as proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind. 1 Ohio Jury Instructions (1968), Section 5.10d. Another helpful expression is found in *State* v. *Carter* (1873), 1 Houst. Cr. C. 402, 410, as follows:

"* * * when we speak of a fact as established by circumstantial evidence, we mean that the existence of it is fairly and reasonably to be inferred from other facts proved in the case."

See, also, Markus, Trial Handbook for Ohio Lawyers (1973) 206, Section 326; and McCormick, Evidence (2 Ed. Cleary Ed. 1972) 435, Section 185.

The sufficiency of circumstantial evidence to prove a fact or to prove guilt depends, among other things, on whether reason and common sense lead us from the facts proved by real or direct evidence

378

to the fact sought to be proved. If the trier of fact determines that the connection between what is proved and what is sought to be proved is strong enough to support a finding of proof beyond a reasonable doubt, the circumstantial evidence is sufficient. On the other hand, if that connection is so weak or attenuated that the trier cannot say the fact sought to be established has been proved beyond a reasonable doubt, then the circumstantial evidence is insufficient. Such decisions are reposed in the trier of facts with one exception: when the connection is so weak or attenuated that no reasonable mind could find proof beyond a reasonable doubt, the matter will be taken away from the trier of the fact because the proof is insufficient as a matter of law to overcome the presumption of innocence. We believe that this is the underlying principle of *Kulig*.

As stated above, we find that the evidence *sub judice* was sufficient to support the guilty finding because it was strong enough to allow reasonable minds to find appellant made no mistake and in fact knowingly caused his common-law wife's death as charged.

Appellant's first *pro se* assignment of error is that the trial court violated the provisions of Crim. R. 23(A) and R.C. 2945.05, because it did not personally address the defendant in accepting his written waiver of jury, and because it did not make the underlying agreement about this waiver a part of the record. Appellant misconstrues the requirements of Ohio law. The waiver of jury must be in writing and must be made knowingly, intelligently and voluntarily (and the instant record fails to demonstrate any violation of these requirements), but there is no requirement that the court must personally address the accused or cause the underlying agreement to be made a part of the record. Those actions are required when the court accepts a plea of guilty or no contest under Crim. R. 11(C) and (F). But such action by the court is not necessary in accepting a waiver of jury. *State* v. *Carr* (Nov. 29, 1978), Hamilton App. No. C-780125, unreported.

Appellant's second assignment of error is that he was denied the effective assistance of counsel, especially because his counsel failed to make known to the court the agreement by which he was induced to waive his rights to a trial by jury, that is, by the promise of probation made by the court. The record fails to support these claims. We find that the conduct of the trial by defense counsel met all pertinent standards of adequacy, and that the record is silent about the existence of any underlying agreement whatsoever whereby appellant might have been induced to waive a jury. The assignment of error has no merit.

Appellant's third assignment of error is that the trial court improperly imposed sentence because its judgment was adversely affected by a "prior constitutionally invalid conviction." The record fails to disclose which of six prior misdemeanor convictions is or are "constitutionally invalid." The defense did not raise a question about any of them. Appellant argues that the court is required to get a probation report and *sua sponte* to test each prior conviction for its constitutional validity. This is not the law. The assignment of error has no merit.

Finding no error, we affirm.

*Judgment affirmed.*

KEEFE, P.J., BETTMAN and BLACK, JJ., concur.