OPINION
A grand jury indicted defendant-appellant Joseph Parker in two separate cases. He was charged in his first case with aggravated arson, arson, and disrupting public service. In his second case, he was indicted for seven counts of aggravated arson, a felony of the first degree, and one count of aggravated arson, a felony of the second degree. The trial court consolidated the two cases and the case proceeded to trial.
Wilecia Collins testified on behalf of plaintiff-appellee State of Ohio and began her testimony by stating she had a relationship and lived with defendant for approximately six months. She said she broke up with him because "he was extremely violent towards me. He jumped on me, beat me up, um, tore things up in my house, said he would kill my family * * * saying he would blow up my house, kill me. He was extremely jealous."
Collins testified that on July 3, 1997, she was afraid of defendant so she stayed with Amir Sharif, her son's father. She said defendant showed up at Sharif's house, rang the doorbell, engaged in a conversation with her son, and walked up and down the driveway and around the house. Eventually, Sharif had to ask defendant to leave the property.
The next day, July 4, 1997, Collins was returning to her own house and was stopped at a red light when defendant appeared "out of nowhere" and began banging on her car. She drove to her house and defendant followed her. Collins said defendant was crying and saying he was going to kill himself and burn her house. Collins stated she talked with defendant and tried to persuade him to leave, but he would not leave. Collins then went into her house and found the inside ransacked. Collins said the alarm she had installed, because defendant stalked her, was disabled. Also, her phone was disabled because the alarm ran through the phone line, so disabling the alarm disabled the phone. Collins said defendant admitted he broke in and disabled the alarm and phone line.
That same day, several of Collins' family members attempted to persuade defendant to leave Collins alone but defendant would not leave. These same family members invited defendant to a family barbecue and explained to him that Collins no longer wanted to date him. Later that evening, around 8:00 p.m., Collins left the barbecue with defendant and a friend. While driving, defendant and Collins engaged in an argument and defendant was forced out of the car. However, before Collins continued home, defendant jumped on the hood of the car and refused to get off. Defendant informed Collins that he was "gonna get me * * * and Amir * * * and kill' everybody." Collins drove a short distance but defendant was able to force himself inside Collins' car. At this point, Collins exited the car and went to the police station to report her car stolen. Defendant drove off in Collins' car but later returned it to her house.
Collins said she arrived at Sharif's house at about 1:30 a.m. on July 5, 1997. She stated she immediately went to bed and was awakened by Sharif around 2:30 a.m. and told to leave the house because it was on fire. Sharif testified that he heard the smoke detector going off and went to investigate. He said he found the inside of the side door was on fire. Sharif stated he immediately woke everyone up and had them exit the house. Sharif said the entire door was on fire and the carpeting in the hallway had also caught on fire.
Collins stated she returned to her own house at 10:30 on the evening of July 5th and defendant showed up. She said defendant wanted to enter her house but she would not let him in so he threatened to break in. Collins testified defendant would not leave the premises. At this point, defendant informed Collins he was going to kill himself and he started lighting his T-shirt on fire with a lighter while on her front porch. Next, defendant became frustrated with Collins and said he was going to light her garage and house on fire. Collins stated defendant walked into her garage, closed the door, and as she looked through the garage door window she could see fire. Collins said she ran out the front door to a nearby pay telephone, because her phone was disabled, and called the police and fire department. She said when the police arrived they found defendant in the garage.
Patrolman Meler said that on July 5, 1997, he responded to the fire at Sharif's house. He said he took a statement from Collins, who said she suspected defendant set the fire. Patrolman Sake testified that when he arrived at Collins' house on July 6, 1997, several policeman had already apprehended defendant and were patting him down. Sake said he found a pile of smoldering paper on Collins' garage floor behind her car and also found defendant's burnt T-shirt inside Collins' car. Sake stated defendant admitted he set his T-shirt and the papers on fire and that the wind must have blown the papers into the garage because he set them on fire outside the garage.
Fireman Patton also testified and said he investigated the fire at Collins' house and found small amounts of charred T-shirt on the front porch and piles of burned paper in the garage. He said one of the piles was located under the gas tank of the car and other piles were located near oil and gas residue. Patton said the oil and gas residue was not easily ignitible but if it caught on fire it would burn hotter than a paper fire.
Pauline Taylor testified, as an alibi witness, on behalf of defendant. She said she was defendant's friend and had a relationship with him in the past. Taylor said she received a phone call from defendant at 1:15 a.m. on July 5, 1997, and their conversation lasted until 2:30. Defendant also testified. He said he did not burn Sharif's house and that he was on the phone with Taylor at the time the fire occurred. He said before the phone call he was at Hot and Juicy's restaurant talking to some friends. Defendant denied cutting Collin's phone lines or disabling her alarm. Defendant said he was crying and did attend a party at Collin's father's house. He said he and Collins were arguing on the way home from the party and he exited the car. He said Collins' cousin punched him in the jaw and he landed on the hood of the car. He said he remained on the hood of the car because his sweater "got caught into the wiper blade of the car." Defendant said later that night he returned to Collins' house. He said he talked to Collins through the window. Defendant said he lit his T-shirt on fire because of the way he was feeling. He testified he was not trying to burn her house down but rather he was trying to commit suicide. Defendant stated he went into defendant's garage and lit a cigarette but did not light a fire in the garage. When asked about admitting to lighting a fire in the garage in the statement he gave to the police, defendant said he was delirious and the police threatened him. Defendant did admit that he lit a piece of paper three or four feet outside the garage but he only did this "cause I was gonna ignite myself." He said he immediately stomped it out with his foot and covered it with his T-shirt.
At the conclusion of all the evidence the trial court found defendant guilty of arson, aggravated arson, and disrupting public service in the first case. In the second case, the trial court found defendant guilty of seven counts of aggravated arson, felonies of the first degree and a single count of aggravated arson, a felony of the fourth degree. Defendant timely filed his notice of appeal and now presents four assignments of error.
Defendant's first two assignments of error are similar so we will address them together. They state as follows:
 JOSEPH PARKER WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY THE REPEATED "OTHER ACTS" TESTIMONY THAT WAS INTRODUCED DURING THE STATE'S CASE.
 JOSEPH PARKER WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, BY TRIAL COUNSEL'S FAILURE TO OBJECT TO THE REPEATED OTHER ACTS EVIDENCE INTRODUCED AGAINST HIM.
Defendant argues he was denied his right to a fair trial by the trial court allowing the admission of repeated "other acts" testimony. Defendant claims the admission of this testimony was prejudicial and allowed the jury to convict based on past misconduct rather than the offense at hand. The testimony defendant complains about is that of Wilecia Collins who stated defendant beat her up, he was violent to her, he threatened to blow her house up, and she had to call the police on him several times. Defendant also contends Collins' testimony about the occurrences from July 4, 1997 to July 6, 1997, concerning defendant harassing her, burning himself and her garage, and taking her car, was so complete and of such a devastating, cumulative nature, that it would have been impossible for any fact finder not to have been prejudiced against him.
In conjunction with this argument, defendant also complains he was rendered ineffective assistance of counsel because defense counsel did not object to the admission of this "other acts" testimony. Defendant also argues defense counsel failed in his duty to preserve this issue for appellate review. Defendant maintains by not objecting to the admission of the "other acts" testimony, defense counsel effectively waived this issue on appeal.
Trial courts enjoy broad discretion in the admission and exclusion of evidence and will not be reversed absent a clear abuse of discretion that materially prejudices the objecting party. State v. Hymore (1967), 9 Ohio St.2d 122, 128, Evid.R. 404 (B) provides:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
Collins testified defendant was violent to her, harassed her, and stalked her because she ended their relationship. She also testified defendant threatened to kill her and Sharif, he threatened to get the both of them, he threatened to blow her house up, and he threatened to burn himself and her garage down. Collins then delineated specifically how defendant followed through on his threats when she testified about his actions between July 4, 1997 and July 6, 1997.
Collins' testimony concerning defendant hitting, harassing, stalking, and threatening her because she ended their relationship was evidence that defendant had a motive to commit arson at Sharif's house and at her house. This testimony characterized defendant as distraught over the severing of the relationship and provided him with a motive or impetus to commit arson. In fact, defendant's threats were more than threats as did so by lighting his T-shirt on fire and also threatened to burn Collins' garage down and lit papers on fire in furtherance of this threat. The trial court did not abuse its discretion in admitting this testimony as it was evidence of motive under Evid.R. 404 (B).
Collins' testimony about defendant's actions between July 4 and July 6, 1997, was not other acts testimony falling under the exclusion of Evid.R. 404 (B). It was merely eyewitness testimony of what Collins witnessed. She witnessed defendant take her car, defendant burn himself, and defendant admitted to breaking into her house. Moreover, these incidents were part of defendant's overall plan or scheme to harass Collins into renewing their relationship. In addition, the Ohio Supreme Court has held "evidence of other fires implicating the defendant may be admitted whenever it is shown to be relevant to a contested issue in the case." State v. Grant (1993), 67 Ohio St.3d 465,471. Thus, Collins' testimony that defendant lit himself on fire is admissible because it is relevant to defendant lighting a fire in the garage. In light of the above analysis, we find the trial court did not abuse its discretion in admitting this testimony.
Defendant also claims that he was rendered ineffective assistance of counsel because defense counsel failed to object to Collins' other acts testimony. To prevail on this claim, defendant must show (1) that counsel performed so deficiently that he was not functioning as the "counsel" guaranteed by the Sixth Amendment and (2) that counsel's errors were prejudicial.Strickland v. Washington (1984), 466 U.S. 668, 687.
We found in the first part of this assignment of error that Collins' testimony did not amount to objectionable other acts testimony. Therefore, defense counsel did not perform deficiently or prejudice defendant by failing to object to this testimony.
Accordingly, defendant's first and second assignments of error are overruled.
In his third assignment of error defendant states as follows:
 JOSEPH PARKER HAS BEEN DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW BY HIS CONVICTIONS FOR AGGRAVATED ARSON AND ARSON, WHICH WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE TO PROVE HIS GUILT BEYOND A REASONABLE DOUBT.
Defendant argues the evidence was insufficient to sustain a conviction of arson or aggravated arson. He claims no one saw who set the fire at Sharif's house. The only evidence linking him to the crime was circumstantial: showing he started a fire at Collins' house, he threatened Collins, and he threatened Collins' family. Defendant claims just because he started one fire and made threats does not mean he set the fire at Sharif's house as well. He maintains this amounts to speculation that he committed arson, and speculation alone is insufficient to support a conviction. Lastly, defendant complains the evidence was insufficient to support the arson convictions for setting fires at Collins' house. He contends R.C. 2909.03 requires a substantial risk of physical harm due to the fire and this was not present in the instant case. He admits that a fire ignited under a car's gas tank could have damaged the garage but there was no other risk. The oil and gas residue was not ignitable, as stated by Fireman Patton, and the likelihood that the gas tank would have ignited from the smoldering papers was virtually nonexistent. Defendant also claims there was no substantial risk of serious harm to Collins as she was in her house when she first saw flames and immediately left to call the fire department. Thus, the evidence was insufficient to convict him of aggravated arson.
The standard for determining whether evidence is sufficient is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenke (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307.
Defendant was convicted of aggravated arson, R.C. 2909.02, and arson, R.C. 2909.03. These two sections read as follows:
2909.02 AGGRAVATED ARSON
 (A) No person, by means of fire or explosion, shall knowingly do any of the following:
 (1) Create a substantial risk of serious physical harm to any person other than the offender;
 (2) Cause physical harm to any occupied structure;
 2909.03 ARSON
 (A) No person, by means of fire or explosion, shall knowingly do any of the following:
 (1) Cause, or create a substantial risk of, physical harm to any property of another without the other person's consent;
 (2) Cause, or create a substantial risk of, physical harm to any property of the offender or another, with purpose to defraud;
In the first case, defendant was convicted of one count of aggravated arson relating to creating a substantial risk of serious physical harm to Wilecia Collins. In the second count, defendant was convicted of arson: knowingly causing or creating a substantial risk of physical harm to the property of Wilecia Collins; i.e.; her garage. In the second case, defendant was convicted of seven counts of aggravated arson and one count of arson. The seven aggravated arson counts related to knowingly creating a substantial risk of serious harm to the seven people who were in Sharif's house when the fire started and the one count of arson related to setting fire to Sharif's house.
Defendant was charged with a single count of arson and a single count of aggravated arson relating to defendant's activities at Collins' house. The facts indicate there was ample evidence defendant was the arsonist. First, Collins stated defendant was at her home and would not leave. She said he stated he was going to light himself on fire and did so by lighting his T-shirt on fire several times. Collins testified that after becoming frustrated with her, defendant said he was going to burn her garage and house down. Collins said she looked in her garage window, saw flames and then ran out of the house to call the fire department and police. Second, Officer Sake testified he arrived on the scene and found defendant's burnt T-shirt inside Collins' car and a pile of smoldering paper on Collins' garage floor behind her car. Sake stated defendant admitted he set his T-shirt on fire and set the papers on fire but he denied doing so in the garage. Instead, defendant claimed he lit the paper on fire outside the garage and the wind must have blown them inside. Third, defendant also gave a written statement to the police and admitted to lighting a fire in Collins' garage. Lastly, Fireman Patton testified he found piles of burned paper in the garage — one of which was located under the gas tank of the car. Other piles were near oil and gas residue.
Defendant admitted he lit his T-shirt and papers on fire, but claimed he lit the papers on fire outside the garage and the wind must have blown them inside the garage. He also said he was delirious and threatened by the police when he signed the statement. Defendant maintains he never wanted to hurt Collins but wanted to commit suicide because "of the way he was feeling."
Defendant threatened to kill Collins and "get" her. He was at her house on July 6, 1997 and he knew Collins was in the house when he lit his shirt on fire several times. Defendant then threatened to burn Collins' house and garage down. He also said he was going to commit suicide. Defendant proceeded into the garage and shut the garage door. Defendant said he just lit a cigarette but Collins said she saw flames through the garage window. She then fled out of her house. Defendant wanted to kill himself and burn Collins' house and garage down. Fireman Patton said he found a pile of charred paper under the gas tank of the car. These facts considered in the aggregate demonstrate: defendant threatened to burn Collins' house and garage down and commit suicide, he knew she was in the house when he made this threat, he then lit a pile of papers on fire under the gas tank of her car. Based on the above analysis we find the state presented sufficient evidence to prove the elements of arson and aggravated arson occurred at Collins' house.
The state showed through Collins' testimony that defendant threatened to get her and get Amir Sharif. Collins testified that defendant stalked her and followed her for a period of three days from July 4, 1997, to July 6, 1997. This included breaking into her house, taking her car, and appearing out of nowhere at places where she was staying. On July 3, 1997, defendant appeared at Sharif's house. Collins was afraid of defendant and would not talk to him or let him in the house. Defendant proceeded to walk up and down the driveway and circle around the house. Eventually Sharif had to ask defendant to leave the premises. The next day, July 4, 1997, defendant was informed by Collins and several of her family members that Collins no longer wanted to see him and their relationship was over. Defendant was distraught and crying. During an incident involving defendant forcefully taking Collins' car, defendant threatened to kill Collins and Sharif and "get them." Early in the morning on July 5, 1997, Sharif heard a fire alarm going off and found the side door and inside carpet of the two unit home he lived in on fire. Sharif was able to wake up the other six people who were staying in the house, including a 20 month-old baby and two minor children, and get them out of the house.
Defendant countered these facts by saying he was at a restaurant talking to friends and at a pay phone with another friend, Pauline Taylor, at the time the fire was discovered. Taylor testified defendant had called her early in the morning on July 5, 1997, and they talked for approximately forty-five minutes.
In this case, the defendant's convictions are based upon circumstantial evidence. It is, however, well-settled under Ohio law that a defendant may be convicted solely on the basis of circumstantial evidence. State v. Nicely (1988), 39 Ohio St.3d 147,151. "* * * [P]roof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence. All three classes have equal probative value, and circumstantial evidence has no less value than the others.Id. at 151, citing State v. Griffin (1979),13 Ohio App.3d 376, 377. "Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable."United States v. Andrino (C.A.9, 1974), 501 F.2d 1373,1378.
Moreover, in State v. Weber (1997), 124 Ohio App.3d 451, the court held the very nature of arson, of necessity, often relies heavily on circumstantial evidence. Thus, the state is not required to produce a person who actually witnessed the defendant set the fire but rather "the element of knowledge required for a finding of aggravated arson can be established by circumstantial evidence." Id. at 462.
Defendant threatened Collins and Sharif. He knew where Sharif lived and he knew Collins was staying there. Defendant was within walking distance of Sharif's house and subsequently set fires a day later at Collins' house. Based on this evidence and that cited above, we find the state presented sufficient evidence to prove the elements of aggravated arson and arson as to the fire at Sharif's house.
Accordingly, defendant's third assignment of error is overruled.
Defendant's fourth assignment of error states as follows:
 JOSEPH PARKER HAS BEEN DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW BY THE MAXIMUM SENTENCES IMPOSED ON HIM, WHEN SAID SENTENCES WERE NOT IMPOSED IN CONFORMITY WITH OHIO'S NEW SENTENCING STRUCTURE.
Defendant argues the trial court erred by failing to comply with the mandates of R.C. 2929.14 (C) and R.C. 2929.19 (B)(2). He claims he was given maximum sentences but the trial court did not make the necessary findings to substantiate imposing the maximum sentence. Specifically, defendant contends the trial court did not find that he committed the worst form of the offense or that he posed the greatest likelihood of committing future crimes. In addition, defendant complains the trial court ordered the sentences in his first case to run consecutive to those imposed in the second case. Defendant maintains the trial court did not make any on-the-record findings to support the imposition of consecutive sentences.
In the first case, defendant was convicted of aggravated arson, a first-degree felony, arson, a felony of the fourth degree, and disrupting public service, a felony of the fourth degree. Defendant received ten years on count one and one year each on counts two and three. The ten years on count one was the maximum sentence. The trial court ordered these sentences to run concurrently. In his second case, defendant was convicted of eight counts of aggravated arson, all first degree felonies. In counts one through seven, he received the maximum of ten years on each count. In count eight, a second degree felony, he received eight years, also the maximum sentence. The trial court ordered these sentences to run concurrently. The trial court also ordered the sentences in the second case to run consecutive to those imposed in the first case.
R.C. 2929.19 (B) (2) mandates that before a trial court imposes the maximum sentence it must make findings and provide reasons for doing so. R.C. 2929.14 (C) governs the imposition of the maximum statutory sentence and provides in pertinent part as follows:
 * * * the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offender pursuant to division (A) of this section only upon offenders who committed the worst form of the offense, upon offenders who pose the greatest likelihood of committing future crimes * * *.
(Emphasis added).
Our review of the sentencing transcript shows the trial court stated "* * * I reviewed the mitigation report and I reviewed the facts of this case and the court finds that you did place many people in jeopardy of their lives in this case." We find that this verbiage does not convey the sentiments necessary to impose the maximum sentence. Therefore, we remand this matter back to the trial court to make the proper findings to support the sentence it imposes.
Defendant also argues the trial court improperly imposed consecutive sentences without making the proper findings. In support, defendant cites State v. Albert (1997),124 Ohio App.3d 225, the court considered R.C. 2929.14, and held before imposing consecutive sentences the trial court must find the sentences are necessary to protect the public from future crime or to punish the offender and that such sentences are disproportionate to the defendant's conduct and that the danger posed to the public or the harm caused by the multiple offenses was so great that no single prison term for any of the offenses would adequately reflect the seriousness of the conduct.Id. at 230.
R.C. 2929.19 (B) (2) (c) requires the trial court to make a finding that gives its reasons for selecting the sentence imposed if it imposes consecutive sentences. In this regard, R.C.2929.14 (E) (3) states:
 "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
* * *
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender' s conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
Here, the trial court's one-sentence finding fails to comply with the statutory requirements for imposition of consecutive sentences. R.C. 2929.14 requires the court to make a finding that the consecutive sentences are necessary to protect the public from future crime or to punish the offender and that such consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger posed to the public and that the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses adequately reflects the seriousness of the conduct. Because this was not done in this case, we remand this matter to the trial court for resentencing of the appellant and the inclusion of such a finding if the court, in its discretion, decides to impose consecutive sentences in this matter. Accordingly, defendant's fourth assignment of error is sustained.
Judgment affirmed and remanded for resentencing.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., CONCURS.
 TIMOTHY F. McMONAGLE. P.J., CONCURS IN JUDGMENT ONLY.
 __________________________________ JOHN T. PATTON, JUDGE