OPINION
Pursuant to an indictment filed June 12, 1997, defendant, Mulanas N. Jackson, was charged in count one with having a weapon while under disability, in violation of R.C.2923.13, and in count two with carrying a concealed weapon, in violation of R.C. 2923.12. Following a jury trial, defendant was convicted of both counts. The trial court sentenced defendant to a six-month term of incarceration on count one and a seventeen-month term of incarceration on count two and ordered that the sentences be served concurrently. Defendant now appeals from that judgment, advancing a single assignment of error:
 THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
The relevant facts adduced at trial follow. Shortly after midnight on May 23, 1997, Columbus Police Officer Paul Coulter, a field training officer, and his trainee, Officer Rodney Reed, were on patrol in a marked police cruiser when they observed defendant driving a vehicle eastbound on East Seventh Avenue. As defendant turned into an alley, he failed to activate his turn signal. Reed pulled the cruiser behind defendant and activated the cruiser's overhead beacons. Defendant stopped his vehicle, and Reed pulled in behind him.
Defendant quickly exited his vehicle and turned to face the officers, who by this time had exited the cruiser. Defendant was approximately twenty to twenty-five feet from the officers. Defendant was wearing a sweatshirt which covered the top of his pants. Defendant tugged two or three times through his sweatshirt at his waist area. Although he did not see a gun, Coulter suspected that defendant was attempting to extract a gun from his waistband. In response to defendant's actions, Coulter drew his gun and warned Reed that defendant had a gun. Defendant then fled the scene on foot.
Coulter pursued defendant, also on foot. During most of the pursuit, Coulter was about fifteen feet behind defendant. During the chase, Coulter observed defendant tugging at the waistband area of his pants. Defendant eventually ran into a dark space between two houses. For the three or four seconds defendant was in this dark area, Coulter lost sight of him. However, Coulter then observed defendant emerge from between the houses and climb over a privacy fence. A few seconds later, Reed, who had also been in pursuit of defendant, apprehended him behind one of the houses.
Coulter handcuffed defendant and reached under his waistband to retrieve the gun Coulter believed defendant to be carrying. Coulter did not find a gun, nor any gun paraphernalia (holster, ammunition, clip) anywhere on defendant's person. Although neither Coulter nor Reed saw defendant throw anything, the officers suspected that defendant had discarded the gun at some point during the pursuit. Based on this suspicion, the officers retraced the pursuit route. "A minute or two" later, Coulter found a loaded gun lying next to the privacy fence over which defendant had climbed. Coulter described the gun as a "Colt, Model 80, .45 caliber semiautomatic handgun, blue steel, rubber handle."
Several other officers, including Officer Kenneth O'Quin, a field training officer, and his trainee, Officer Donald Smith, arrived at the scene in response to Reed's radio request for assistance. After defendant was apprehended, O'Quin and Smith transported him to police headquarters to be processed through the department's identification unit; Coulter and Reed followed in their cruiser. Once inside police headquarters, Coulter, Reed, O'Quin and Smith escorted defendant to the identification unit to be fingerprinted and photographed. As they were walking, Coulter and O'Quin explained to the trainees that defendant's fingerprints would be compared with fingerprints taken from the gun recovered at the scene. According to O'Quin, defendant spontaneously said "you can't get no prints off of blue steel."
Coulter and Reed turned the gun into the police property room and requested both a firearms and latent fingerprint examination of the gun, magazine and ammunition. Mark Hardy, a criminalist with the Columbus Police Department, examined and test fired the gun and determined it to be in good operating condition. Mark Bryant of the Columbus Police Department's Identification Unit, Latent Section, examined the gun, ammunition and magazine. Although he was able to determine that two latent fingerprints were present on the magazine, the prints were of no value in making a positive identification through comparison to known fingerprints. Bryant testified that although the surface of a gun is usually conducive to fingerprints, retrieval of quality prints may be difficult, depending upon the physical characteristics and condition of both the person and the gun. When questioned, Bryant testified that it is possible for a person to handle a gun and not leave any identifiable fingerprints.
Finally, it was stipulated that defendant was convicted February 4, 1992, of felony drug abuse and is, therefore, under legal disability.
By his assignment of error, defendant asserts that his convictions are not supported by sufficient evidence or by the manifest weight of the evidence. Defendant does not contend that he was not under a legal disability, or that the weapon recovered by Coulter was not an operable firearm. Defendant contends, rather, that the evidence was insufficient to support a finding that he possessed the weapon or that it came from a concealed area on or about his person.
"Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. * * *" State v. Smith (1997), 80 Ohio St.3d 89,113, following State v. Thompkins (1997), 78 Ohio St.3d 380,386. "When reviewing a claim of insufficient evidence, the relevant inquiry is whether any rational factfinder, after viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Clemons (1998), 82 Ohio St.3d 438,444, following State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact." Clemons, supra.
By contrast, in order for an appellate court to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Thompkins, supra, at 387. Whether a criminal conviction is against the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180, 193. ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.") Thompkins, supra, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
In addition, the Ohio Supreme Court has held that "[o]n the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. It is also the jury's function to make those inferences reasonably supported by the evidence. State v. Vondenberg (1980), 61 Ohio St.2d 285, 288. Further, "circumstantial evidence and direct evidence inherently possess the same probative value[.]" Jenks, supra, at paragraph one of the syllabus. Thus, "proof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence." State v. Griffin (1979), 13 Ohio App.3d 376, 377.
In the instant case, defendant was convicted of violating R.C. 2923.12(A) and R.C. 2923.13(A)(3), which provide, in pertinent part, as follows:
R.C. 2923.12 Carrying concealed weapons.
 (A) No person shall knowingly carry or have, concealed on his or her person or concealed ready at hand, any deadly weapon or dangerous ordnance.
 R.C. 2923.13 Having weapons while under disability.
 (A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
* * *
 (3) The person * * * has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * *.
The evidence adduced at trial, although circumstantial in nature, provided a sufficient basis upon which the jury could reasonably conclude that defendant carried a concealed weapon while under a legal disability. A weapon is concealed if it is so situated as to not be discernible by ordinary observation by those near enough to see it if it were not concealed. State v. Davis
(1984), 15 Ohio App.3d 64, 65. Coulter testified that he was standing only twenty-five feet away from defendant when defendant exited his vehicle. The physical proximity of Coulter to defendant put him in a position to make an "ordinary observation." Coulter testified that no gun was visible. He further testified that defendant wore a sweatshirt that covered the top of his pants, and that defendant's actions in tugging at his waist area through the sweatshirt led him to believe that defendant was carrying a concealed weapon.
When he was unsuccessful in retrieving the object from his waistband, defendant ran away from the police officers. Flight from the police, without cause for doing so, may be considered as indicative of a consciousness of guilt. State v.Ervin (Dec. 2, 1999), Franklin App. No. 99AP-279, unreported, citing State v. Eaton (1969), 19 Ohio St.2d 145, paragraph six of the syllabus.
Although no gun was found on defendant's person, a gun was recovered from the area next to the privacy fence over which defendant had climbed within minutes of his apprehension.
At police headquarters, defendant made an unsolicited statement to O'Quin regarding the difficulty in obtaining fingerprints from a weapon made of blue steel. No evidence suggested that any of the officers ever discussed with defendant, or within defendant's hearing, that the firearm discovered at the scene was made of blue steel.
Finally, the lack of physical evidence such as fingerprints linking defendant to the gun did not preclude the jury from concluding that defendant had handled the gun. R.C.2923.12 does not require that a defendant's fingerprints be lifted from the weapon. See State v. Townsend (1991), 77 Ohio App.3d 651,653. Further, Bryant testified that it is possible to handle a gun and not leave any identifiable fingerprints.
Based upon the foregoing evidence and reasonable inferences drawn therefrom, it was not unreasonable for the jury to have found, after viewing the evidence in a light most favorable to the prosecution, that at the time defendant was stopped for the traffic violation, he had a gun tucked inside his clothing and concealed from sight; that he ran away from the officers because he knew he was unlawfully carrying a gun; and that he discarded the weapon as he climbed over the privacy fence immediately prior to his apprehension. As noted previously, a reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169, syllabus.
Similarly, based upon the evidence adduced at trial, this court concludes that the jury, in finding defendant guilty of carrying a concealed weapon and having a weapon while under a disability, did not lose its way and create such a manifest miscarriage of justice as to require a new trial. We hold that defendant's convictions are against neither the weight nor the sufficiency of the evidence. Accordingly, defendant's assignment of error is overruled.
Having overruled defendant's sole assignment of error, this court hereby affirms the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BRYANT, J., and BOWMAN, P.J., concur.