OPINION
{¶ 1} This cause came to be heard upon the appeal from the Court of Common Pleas of Lake County.
 {¶ 2} In September, 2002, Lauren Pistillo, appellant herein, was employed by Consumer Support Services ("CSS"). CSS is a company that provides personal aides to disabled individuals for help in their daily activities. While employed with CSS, appellant assisted two individuals, Thomas Dunlap and Melvin Dabkowski. The men shared an apartment in Winchester Hills, an apartment complex in Willoughby Hills, Ohio. Both men suffered from various mental and physical disabilities and required twenty-four hour supervision. Due to the nature of her duties, appellant was issued a "swipe key card" to gain admittance into the apartment building, as well as a key to Dabkowski's and Dunlap's apartment.
 {¶ 3} CSS employed two shift rotations while assisting Mr. Dunlap and Mr. Dabkowski: The first shift ran between 1:00 p.m. and 10:00 p.m. and the second from 10:00 p.m. to 8:00 a.m. Those who worked the first shift were responsible for getting the men off the bus when they returned from their daily workshop. The first shift employees would also assist the men with their meals and transport them to the grocery store. Second shift employees would, inter alia, make sure the men awoke on time, ate breakfast, and boarded the proper bus for their daily workshop. Until her employment was terminated with CSS on September 16, 2002, appellant worked the second shift.
 {¶ 4} Each week, Kim Wells, a supervisor for CSS, would visit the men's apartment and perform an inventory. In particular, Ms. Wells would make sure all medications were in order and each man had sufficient funds for groceries and activities. Wells also inspected accounting ledgers kept by CSS employees to ensure that the listed debits and ultimate balances matched the actual amount of available funds.
 {¶ 5} On September 18, 2002, Dunlap was admitted to the hospital. On September 19, 2002, Tameka Jackson, was the first shift employee assisting the men. That day, Jackson drove Dabkowski to the hospital to visit Dunlap. Dabkowski purchased a "get well" card at the hospital. After visiting Dunlap, Jackson drove Dabkowski back to the apartment. At the apartment, Jackson placed Dabkowski's money inside a locked cabinet, recorded the transaction in the appropriate ledger, and initialed the entry. According to the ledger, Dabkowski had $21.92 at approximately 10:00 p.m. on the evening of September 19, 2002.
 {¶ 6} Jennifer Kidd, the second shift employee on September 19, 2002, arrived at approximately 10:00 p.m. and stayed through the night. Testimony suggests that the night was uneventful; Kidd assisted Dabkowski out of bed and saw him to his bus. Kidd did not handle any money nor record any transactions in the expense ledgers. Kidd expressly testified that she did not take any money from Dunlap or Dabkowski. In fact, Kidd testified she had no idea that money was missing until a CSS staff meeting several days later.
 {¶ 7} On Friday, September 20, 2002, at approximately 11:00 a.m., Wells testified she stopped by Dunlap's and Dabkowski's apartment to perform her weekly inspection and audit. Although the cabinet in which the men's money was kept was locked, Well's testified the available money did not match the amount recorded in the ledgers. Specifically, Dabkowski's ledger reflected a balance of $21.92; however, there was only $1.92 remaining in his cash binder. Wells also noted that approximately $7 in quarters was missing from Dabkowski's belongings. Moreover, Dunlap's ledger reflected a balance of $17.57, of which $1.36 was remaining. All together, approximately $27 was missing from Dabkowski's funds and $16.21 was missing from Dunlap's.
 {¶ 8} Wells testified that she immediately called Tameka Jackson and Jennifer Kidd, the last two employees on duty the previous evening. Neither employee could be contacted. At approximately 1:00 p.m., Jackson arrived at the apartment for her Friday shift. Upon entering the apartment, Jackson noticed that a food stamp card was on the floor. Concerned, Jackson paged Wells who immediately returned the call. Wells told Jackson of the missing money and asked her to double check the cabinet. Jackson confirmed the missing money. Wells was unable to make contact with Kidd at that time.[1]
 {¶ 9} On the afternoon of September 20, 2002, Wells contacted Gene Mustard, the building manager of Winchester Hills. Wells requested a report of who entered the apartment building using the key card system after 8:00 a.m. that morning. The report indicated that the key card assigned to appellant was used to enter the building at 8:58 a.m. on September 20, 2002. With this information, Wells contacted the Willoughby Hills Police Department.
 {¶ 10} On January 28, 2003, the Lake County Grand Jury indicted appellant on one count of burglary, a felony of the second degree, and two counts of theft, felonies of the fifth degree. On August 4, 2003, the matter proceeded to jury trial. At the close of the state's case, the defense moved for a judgment of acquittal pursuant to Crim.R. 29. The motion was overruled. The defense subsequently rested.
 {¶ 11} On August 5, 2003, the jury convicted appellant on all counts. Appellant was sentenced to three years imprisonment for the burglary conviction and two six month sentences for each respective theft conviction to run concurrently with the burglary conviction. Appellant now appeals raising the following assignments of error:
 {¶ 12} "[1.] The trial court erred to the prejudice of the defendant-appellant when it denied her motion for acquittal made pursuant to Crim.R. 29.
 {¶ 13} "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 14} Under her first assignment of error, appellant attacks the sufficiency of the state's evidence. When analyzing whether a conviction is supported by sufficient evidence, our inquiry is "`whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Norwood (Sept. 30, 1997), 11th Dist. Nos. 96-L-089 and 96-L-090, 1997 Ohio App. LEXIS 4420, at 18, quotingState v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The question of evidential sufficiency is one of law. Id.
 {¶ 15} Appellant was indicted on one count of burglary in violation or R.C. 2911.12(A)(2), which provides:
 {¶ 16} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 17} "* * *
 {¶ 18} "(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with the purpose to commit in the habitation any criminal offense;"
 {¶ 19} Appellant argues the state failed to prove all necessary elements of the charged crime. Specifically, appellant maintains the state failed to present sufficient evidence that, through stealth or deception, she trespassed in Dunlap's and Dabkowski's apartment. In essence, appellant's attacks are directed at the circumstantial character of the evidence on which her conviction is premised.
 {¶ 20} Circumstantial evidence involves proof of facts through direct evidence from which a factfinder may infer other facts in accordance with his or her common sense. See, State v.Tedrick (Nov. 13, 1984), 12th Dist. No. CA84-01-003, 1984 Ohio App. LEXIS 11503, at 21. Put differently, when a fact is established by circumstantial evidence, its existence may fairly and reasonably be inferred from other facts proved in the case.
 {¶ 21} The sufficiency of circumstantial evidence to prove a fact or guilt is predicated upon whether reason and common sense lead us from the facts proved by real or direct evidence to the fact sought to be proved. State v. Griffin (1979),13 Ohio App.3d 376, 377-378. If the jury determines that the nexus between what is proved and what is sought to be proved is strong enough to support a finding of proof beyond a reasonable doubt, the circumstantial evidence is sufficient. Id. at 378. However, if the connection is so tenuous that the jury cannot say the fact sought to be established has been proved beyond a reasonable doubt, then the circumstantial evidence is insufficient. Id. Such decisions rest with the factfinder save one exception: When the connection is so weak that no reasonable mind could find proof beyond a reasonable doubt, the issue will be taken from the trier of fact as the proof is insufficient as a matter of law to overcome the presumption of innocence. Id.
 {¶ 22} That said, circumstantial evidence and direct evidence inherently possess the same probative value. Jenks, supra, at 272. As circumstantial evidence and direct evidence are indistinguishable in this respect "all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." Id.
 {¶ 23} In the current matter, the state presented sufficient circumstantial evidence that appellant acted with stealth or deception[2] to gain entrance into the victims' apartment. Specifically, appellant had been terminated four days prior to the crime and had not returned the key card or the apartment key. However, the card issued to her was used to enter the building on the morning the theft was discovered. Further, as appellant was a former employee of CSS and worked with the victims before her termination, she knew the victim's schedule and was familiar with the building as well as the victim's apartment. The jury could draw the reasonable inference, from this evidence, that appellant used the card and the key to enter the building and the apartment under the guise of a CSS employee when, in fact, she had been terminated.
 {¶ 24} By implication, the state presented sufficient circumstantial evidence that appellant was trespassing:[3]
Appellant was no longer an employee of CSS at the time of the crimes; however, she was still in possession of the key card as well as the key to the victims' apartment. The factfinder could draw the reasonable conclusion that appellant used the key card and key to enter the building and apartment without privilege to do so. For the foregoing reasons, the state presented sufficient evidence to overcome appellant's Crim.R. 29 motion on the burglary charge. Accordingly, the trial court did not err in denying appellant's motion on this issue.
 {¶ 25} Appellant next contends that her convictions for theft were not supported by sufficient evidence. R.C. 2913.02(A)(1) reads:
 {¶ 26} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 27} "(1) Without consent of the owner or person authorized to give consent;"
 {¶ 28} Specifically, appellant contends the state failed to present adequate evidence that she deprived the victims of their money because it was impossible to determine when the cash disappeared from the locked cabinet.
 {¶ 29} The state put forth evidence that approximately $27 was missing from Dabkowski's money and $16.21 was missing from Dunlap's money. This evidence, when considered in conjunction with the circumstantial evidence that appellant, by stealth or deception, trespassed in the victim's apartment, is sufficient to prove that appellant committed the thefts with which she was charged. Therefore, the trial court did not err in overruling appellant's motion for acquittal in relation to the theft charges.
 {¶ 30} Appellant's first assignment of error is without merit.
 {¶ 31} In her second assignment of error, appellant challenges the manifest weight of the evidence on which the conviction is based. "A judgment of a trial court should be reversed as being against the manifest weight of the evidence `only in the exceptional case in which the evidence weighs heavily against the conviction.'" City of Mentor v. Riskin
(Dec. 3, 1999), 11th Dist. No. 98-L-203, 1999 Ohio App. LEXIS 5758, at 6, quoting, State v. Martin (1983),20 Ohio App.3d 172,175. A review of the weight of the evidence requires an appellate court to observe the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a miscarriage of justice the conviction must be overturned. Id., at 6-7.
 {¶ 32} In support of her manifest weight challenge, appellant initially reiterates her contention that the state failed to prove the crimes in question. To the extent that such contentions are mere recitations of the same arguments overruled above, we need not perform a redundant analysis.
 {¶ 33} That said, however, appellant directs this court's attention to certain anomalies in the evidence which, in her view, weigh heavily against her convictions. Appellant points out that the ledgers used to account for the victims' expenses did not reflect the theft immediately after it was discovered. If the theft was not immediately noted, it is impossible to conclude, beyond a reasonable doubt, the money was taken on the morning of September 20, 2002. Further, although Wells eventually noted a "theft" in Dabkowski's ledger, it points back to September 19, 2002 instead of September 20, 2002, the alleged date of the theft. According to appellant, if the theft occurred on September 19, 2002, not September 20, 2002, the state would have no evidence against appellant.
 {¶ 34} At trial, the testimony of both Jackson and Wells served to clarify potential confusions associated with the ledger entries. First, Wells testified she never dealt with a theft and was unaware of any established procedures on the matter. The uniqueness of the situation can therefore account for any disorganization regarding the manner in which the issue was handled. Moreover, Jackson testified she did not note the theft after confirming it with Wells because she felt "it was [her] supervisor's place to document the theft. Because [she] wasn't trained on how to do it, and [Wells] did say that she was going to replace the money."
 {¶ 35} That said, however, Jackson testified that the last entry in Dabkowski's ledger was on September 19, 2002, after she and Dabkowski returned from the hospital. Jackson testified Dabkowski's balance was $21.92 after subtracting the amount used to pay for the "get well" card purchased for Dunlap. Further, it was established that Dunlap was admitted to the hospital on September 18, 2002, and the last entry in his ledger was made on the same date and reflected a balance of $17.57. Although it is unclear as to when Wells noted the word "theft" in Dabkowski's ledger, a reasonable factfinder could infer that the arrow pointing to September 19, 2002 was directed toward the balance ($21.92) from which the $20 was taken.
 {¶ 36} Appellant further argues that Jackson's original police statement contains an inconsistency which rendered her testimony unreliable and throws the date and time of the crimes into further question. Specifically, Jackson's original police statement, given September 22, 2002, indicated that the crimes were committed on Thursday, September 19, 2002. In a later, corrected statement, she indicated that the crimes occurred on September 20, 2002.
 {¶ 37} At trial, Jackson testified that the error in her original statement was merely an oversight. On cross-examination, Jackson admitted that Wells brought the erroneous date to her attention thereby prompting her to change her statement; however, Jackson continually maintained that the error in her initial statement was a simple mistake.
 {¶ 38} Under the circumstances, the inconsistency in the dates of Jackson's first and second statements does not nullify the probative force of the other evidence put forth by the state. Moreover, defense counsel impeached Jackson on this issue yet the jury still rendered a verdict of guilty. In sum, the jury did not lose its way in convicting appellant. Therefore, appellant's convictions are not against the manifest weight of the evidence.
 {¶ 39} Appellant's second assignment of error is without merit.
 {¶ 40} For the above reasons, appellant's two assignments of error are overruled and the judgment of the Lake County Court of Common Pleas is therefore affirmed.
O'Neill, J., Grendell, J., concur.
[1] It is worth noting that both Jackson and Kidd testified they had no criminal record and had never stolen anything from the residents they assisted. Moreover, Wells testified she never had any problems regarding theft with either Jackson or Kidd.
[2] The trial court instructed the jury: "Stealth means any secret or sly act to gain entrance, deception means knowingly deceiving another or causing another to be deceived by any false or misleading representation by withholding information, by preventing another from acquiring information, or by any other conduct, act or omission which creates, confirms, or perpetuates a false impression in another, including a false impression as to law or value or state of mind, or other objective or subjective fact."
[3] The trial court instructed the jury: "Trespass means, without privilege to do so, any of the following: knowingly enter or remain on the land or premises of another, knowingly enter or remain on the land or premises of another the use of which was lawfully restricted to certain persons or purposes or modes or hours, and the defendant knew that, or was reckless with regard to whether she was in violation of any such restriction; three, recklessly enter or remain on the land or premises of another as to which notice against unauthorized access or presence was given to the defendant (A) by actual communication to the defendant, (B) by posting in a manner reasonably calculated to come to the attention of potential intruders, or (C) by fencing or other enclosure manifestly or obviously designed to restrict access; or four and being on the land or premises of another negligently fail or refuse to leave upon being notified to do so by the owner, or occupant, or the servant or agent of the owner."