[Cite as *State v. Little*, 2023-Ohio-4098.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NOS. 2023-P-0011 |
| | 2023-P-0012 |
| Plaintiff-Appellee, | |
| | Criminal Appeals from the |
| - vs - | Court of Common Pleas |
| | |
| ANGEL LITTLE, | |
| | Trial Court Nos. 2021 CR 00659 |
| Defendant-Appellant. | 2022 CR 00323 C |

# O P I N I O N

Decided: November 13, 2023
Judgment: Affirmed

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Eric R. Fink*, 11 River Street, Kent, OH 44240 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} In this consolidated appeal, defendant-appellant, Angel Little ("Mr. Little"), appeals from his judgment of conviction in the Portage County Court of Common Pleas following a jury trial in which he was found guilty of three counts of aggravating trafficking in drugs and one count of aggravated possession of drugs.

{¶2} Mr. Little raises three assignments of error, contending (1) the trial court erred in denying his pretrial motion to suppress; (2) his convictions were not supported by sufficient evidence; and (3) the trial court erred in allowing joinder and failing to sever his two indictments for trial.

{¶3}　After a careful review of the record and pertinent law, we find as follows:

{¶4}　(1) The trial court did not err in denying Mr. Little's motion to suppress. The traffic stop of Mr. Little's vehicle was constitutional because the police had a reasonable and articulable suspicion that he had engaged in drug activity, as well as probable cause that he had committed traffic violations. Mr. Little's detention for a canine sniff was also constitutional. The testimony from the suppression hearing does not indicate Mr. Little's detention was artificially prolonged. Even if it was, the delay was supported by reasonable, articulable suspicion of Mr. Little's drug activity.

{¶5}　(2) The state presented sufficient evidence, if believed, to prove beyond a reasonable doubt that Mr. Little committed three counts of aggravated trafficking in drugs and one count of aggravated possession of drugs. The testimony of the police's confidential informant, if believed, was sufficient to establish Mr. Little either sold, offered to sell, or was complicit in selling methamphetamine during three controlled drug buys. In addition, when the circumstantial evidence presented at trial is viewed in a light most favorable to the state, it was sufficient to establish Mr. Little constructively possessed the large amount of methamphetamine found under the hood of the vehicle he was driving.

{¶6}　(3) Mr. Little has not established plain error with respect to the trial court's failure to sever his indictments for trial. The record supports the conclusion that based on application of the "joinder test," the evidence presented for each charge was simple and direct.

{¶7}　Thus, Mr. Little's assignments of error are without merit, and we affirm the judgment of the Portage County Court of Common Pleas.

2

Case Nos. 2023-P-0011 and 2023-P-0012

**Substantive and Procedural History**

{¶8} This matter involves Mr. Little's convictions on two felony indictments that were joined for trial: case no. 2022 CR 00323 C ("the 2022 case") and case no. 2021 CR 00659 ("the 2021 case"). We summarize the underlying facts chronologically.

*The 2022 Case*

{¶9} The 2022 case involves three controlled drug buys in which a confidential informant ("C.I.") for the Portage County Drug Task Force ("the Drug Task Force") purchased methamphetamine from Mr. Little. For each buy, the police equipped the C.I. with a video/audio recording device and cash, transported the C.I. to the arranged destination, and searched the C.I. before and after the transaction.

{¶10} The first buy occurred on February 26, 2021, at a mobile home park in Ravenna, Ohio. The C.I. contacted Mr. Little, and he agreed to sell an "eight ball," i.e., "a couple grams of meth," for $100. Upon arrival, a woman answered the door and led the C.I. to a bedroom where Mr. Little was present. The C.I. engaged in a short conversation with Mr. Little, exchanged money for drugs, and left. Sgt. Graham of the Streetsboro Police Department watched the video recording and identified Mr. Little from a screen capture that he compared to a photo from Mr. Little's social media account. Subsequent testing revealed the substance weighed 3.7 grams and contained methamphetamine.

{¶11} The second buy occurred on March 5, 2021, at an apartment complex in Kent, Ohio. The C.I. contacted Mr. Little, and he agreed to sell another "eight ball" for either $60 or $80. The C.I. had difficulty locating Mr. Little and called him on the phone. Mr. Little told the C.I. to go to a back window. Upon arrival, an unidentified "skinny young kid" completed the transaction through the window. The C.I. reported seeing Mr. Little

3

inside the apartment standing next to the unknown person. Subsequent testing revealed the substance weighed 1.68 grams and contained methamphetamine.

{¶12} The third buy occurred on March 23, 2021, near an elementary school in Ravenna, Ohio. The C.I. contacted Mr. Little, and he agreed to sell methamphetamine. They were unable to agree on a location, so the C.I. suggested the school. While walking to the building, the C.I. was met by Hailey Haney ("Ms. Haney"). The C.I. asked Ms. Haney if she was Mr. Little's "people." Ms. Haney responded in the affirmative and said she was Mr. Little's cousin. According to Ms. Haney, she was at a house with Mr. Little and overheard his conversation with the C.I. She volunteered to complete the transaction because she wanted to "get high." While walking to the meeting place, Ms. Haney ate some of the drugs. The C.I. and Ms. Haney completed the transaction. Subsequent testing revealed the substance weighed 3.46 grams and contained methamphetamine.

{¶13} In March 2022, the Portage County Grand Jury indicted Mr. Little on three counts of aggravated trafficking in drugs in violation of R.C. 2925.03: aggravated trafficking in methamphetamine in an amount exceeding (but not exceeding five times) the bulk amount in the vicinity of a school or juvenile, a second-degree felony (count 1); aggravated trafficking in methamphetamine in an amount less than the bulk amount, a fourth-degree felony (count 2); and aggravated trafficking in methamphetamine in an amount exceeding (but not exceeding five times) the bulk amount, a third-degree felony (count 3). Ms. Haney was charged as a co-defendant in count 1. Mr. Little pleaded not guilty to the charges.

4

Case Nos. 2023-P-0011 and 2023-P-0012

### The 2021 Case

{¶14} The 2021 case involves a traffic stop that occurred on June 23, 2021, in which the police discovered a large amount of methamphetamine under the hood of the vehicle Mr. Little was driving.

{¶15} The Drug Task Force was conducting an interdiction operation focused on hotels in Brimfield, Ohio. Sgt. Graham was sitting in an unmarked vehicle in a hotel parking lot. At approximately 7:15 p.m., he observed Mr. Little, whom he recognized from the prior controlled buys, drive an SUV into the parking lot along with a passenger. Sgt. Graham later learned the passenger was Jason Little ("Jason"), who is Mr. Little's father or stepfather and a known drug trafficker who had spent time in prison.

{¶16} Mr. Little drove towards the back of the hotel and parked. Two women came out, walked to the driver's side of the vehicle, and appeared to engage in a transaction. After a brief period of time, the women walked away, and Mr. Little pulled out of the parking lot.

{¶17} Sgt. Graham radioed the other officers in the area, informed them about what he had observed, and requested the initiation of a traffic stop. He also informed the officers that based on information he had received from another member of the Drug Task Force, Mr. Little was known to keep methamphetamine under the hood of his vehicle.

{¶18} Det. Centa from the Portage County Sheriff's Office observed Mr. Little's vehicle enter I-76 and begin traveling westbound at approximately 50 to 55 miles per hour. Shortly thereafter, Mr. Little abruptly crossed over the fog line with all four tires, exited the highway, and began traveling southbound on State Route 532. Det. Centa informed the other officers of the traffic violations.

5

{¶19} Officer Kennedy of the Brimfield Police Department eventually initiated a traffic stop of Mr. Little's vehicle. He radioed for backup because there was more than one person in the vehicle, and Officer Rapp arrived. Both officers approached the vehicle, and Officer Kennedy informed Mr. Little he was stopped for impeding traffic.

{¶20} Officer Kennedy asked Mr. Little for his information. Mr. Little produced copies of a temporary permit and his identification card, and Jason produced his driver's license. Officer Kennedy walked back to his patrol car, radioed the parties' information to dispatch, and called for a canine unit.

{¶21} Officer Kennedy walked back to the vehicle and asked Mr. Little where he was going. Mr. Little said he was driving to the gas station on Gilcrest Road because he was running out of gas. According to Officer Kennedy, however, Mr. Little was driving in the opposite direction, which raised his suspicion.

{¶22} Sgt. Knarr of the Brimfield Police Department intended to respond with his canine partner but was delayed. Instead, Trooper English of the Ohio State Highway Patrol arrived with his canine partner, Hunter. The officers had Mr. Little and Jason exit the vehicle, patted them down for weapons, and placed them in separate patrol cars. Hunter circled the outside of the vehicle and performed a free air sniff. He notified Trooper English of a positive indication, and Officers Kennedy and Rapp began searching the vehicle.

{¶23} Sgt. Knarr arrived and assisted with the search. According to both Officer Kennedy and Sgt. Knarr, a member of the Drug Task Force drove by and told them to make sure they checked under the vehicle's hood. The officers opened the hood and discovered a black sunglasses case on the upper portion of the passenger side. Upon

6

opening the case, they discovered baggies of what appeared to be methamphetamine. The officers read Miranda warnings to Mr. Little and Jason and placed them under arrest. Mr. Little was not cited for any traffic violations. Subsequent testing indicated the substance found under the hood weighed 55.22 grams and contained methamphetamine.

{¶24} Mr. Little did not own the vehicle. Sgt. Graham later contacted the registered owner, Christina Brode ("Ms. Brode"). Ms. Brode indicated she was Mr. Little's friend and lent him the vehicle so he could practice driving with Jason in preparation for his upcoming driver's license test. She emphasized that the methamphetamine discovered under the hood did not belong to her.

{¶25} In July 2021, the Portage County Grand Jury indicted Mr. Little on two felony counts: aggravated trafficking in drugs in an amount exceeding five times (but not exceeding 50 times) the bulk amount, a second-degree felony, in violation of R.C. 2925.03 (count 1), and aggravated possession of drugs in an amount exceeding five times (but not exceeding 50 times) the bulk amount, a second-degree felony, in violation of R.C. 2925.11 (count 2). Mr. Little pleaded not guilty to the charges.

{¶26} Mr. Little filed a motion to suppress, contending the traffic stop and his detention were unconstitutional. The trial court held a suppression hearing, during which the state presented testimony from Sgt. Graham, Det. Centa, Officer Kennedy, Trooper English, and Sgt. Knarr. The trial court filed a judgment entry overruling Mr. Little's motion to suppress.

### Trial Court Proceedings

{¶27} In May 2022, the state filed a motion for joinder of the two indictments pursuant to Crim.R. 13, which Mr. Little opposed. The trial court filed a judgment entry

7

granting the state's motion for joinder. Mr. Little filed a motion to reconsider. The trial court held a hearing and filed a judgment entry denying Mr. Little's motion to reconsider.

{¶28} The matter was tried to a jury from January 10 through 12, 2023. The week before trial, on January 5, 2023, Mr. Little filed a motion for severance and relief from prejudicial joinder pursuant to Crim.R. 14. The trial court addressed this motion on the first day of trial, stating, "I had already granted the State's motion months ago to join the cases. I didn't know if you were aware of that, [defense counsel], because I think [prior defense counsel] was on it then." Defense counsel responded, "After I filed the motion, I became aware that we'd already talked about this and then I'd already requested that you reconsider as well. * * * So we understand that nothing has changed." The trial court stated it intended to deny the motion for severance "because it was already granted that they be joined for various reasons."

{¶29} The trial court also addressed the state's request to amend the indictments. For the 2021 case, the state indicated it was only proceeding on count 2, i.e., aggravated possession of drugs. For the 2022 case, the state indicated it was dismissing the school zone specification in count 1, which reduced the charge to a third-degree felony.

{¶30} The state presented testimony from Sgt. Graham, the C.I., Det. Centa, Ms. Haney, Officer Kennedy, Trooper English, Sgt. Knarr, and two forensic scientists from Ohio Bureau of Criminal Investigation ("Ohio BCI"). The state submitted exhibits consisting of the methamphetamine, the video recordings of the controlled buys, the screenshot of Mr. Little, body camera footage from the traffic stop, and reports from Ohio BCI.

8

**{¶31}** Following the state's case-in-chief, the defense moved for acquittal pursuant to Crim.R. 29, which the trial court denied. The defense rested without presenting testimony or exhibits. The defense renewed its motion for acquittal, which the trial court again denied.

**{¶32}** The jury returned its verdict finding Mr. Little guilty of all four of the offenses presented to it. The trial court ordered a presentence investigation and set the matter for sentencing.

**{¶33}** On January 27, 2023, Mr. Little filed a motion for a new trial on the grounds of prejudicial joinder.

**{¶34}** On February 27, 2023, the trial court held a sentencing hearing. The trial court addressed Mr. Little's motion for a new trial. Defense counsel stated, "Now that we've had the trial, it's even more apparent that Mr. Little was prejudiced by the trying of both unrelated cases together." The trial court overruled Mr. Little's motion for a new trial, stating it did not believe it was an appropriate remedy. The trial court sentenced Mr. Little to an aggregate prison term of five to six-and-a-half years and a mandatory fine of $7,500. In March 2023, the trial court filed a judgment entry memorializing Mr. Little's convictions.

**{¶35}** Mr. Little filed two notices of appeal, which we consolidated sua sponte. He raises the following three assignments of error:

**{¶36}** "[1.] The trial court erred in denying Mr. Little's Motion to Suppress Evidence from the June 23, 2021 traffic stop in violation of his constitutional rights.

**{¶37}** "[2.] Mr. Little's convictions for Aggravated Possession and Aggravated Trafficking are not supported by sufficient evidence to sustain a conviction.

Case Nos. 2023-P-0011 and 2023-P-0012

**{¶38}** "[3.] The trial court erred in allowing joinder and failing to sever Mr. Little's two cases for purposes of trial."

## Motion to Suppress

**{¶39}** In his first assignment of error, Mr. Little contends the trial court erred in denying his motion to suppress.

**{¶40}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.* On appeal, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

### *Traffic Stop*

**{¶41}** Mr. Little first contends the traffic stop was unconstitutional because it was pretextual. "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7. Stopping an automobile and detaining its occupants constitutes a "seizure" within the meaning of the Fourth and Fourteenth Amendments. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

10

Case Nos. 2023-P-0011 and 2023-P-0012

{¶42} The police may constitutionally stop a motorist if the seizure is premised upon either a reasonable suspicion or probable cause. *State v. Eggleston*, 2015-Ohio-958, 29 N.E.3d 23, ¶ 20 (11th Dist.). Specifically, "[t]he United States Supreme Court has stated that a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." *Mays* at ¶ 7. "[I]f an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *Id.* at ¶ 8. In addition, "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), syllabus.

{¶43} Here, the stop of Mr. Little's vehicle was constitutional under either of the foregoing bases. First, the police had a reasonable and articulable suspicion that Mr. Little had engaged in drug activity. Sgt. Graham testified during the suppression hearing that he directly observed a possible hand-to-hand drug transaction in the hotel parking lot between Mr. Little and the two women. Second, the police had probable cause that Mr. Little had committed traffic violations. Det. Centa testified that he directly observed Mr. Little impede traffic with his slow rate of speed and cross over the fog line with all four tires while exiting the highway. While it appears the officers were more interested in investigating Mr. Little for potential drug activity rather than traffic offenses, this does not render the stop unconstitutional.

11

### *Detention*

**{¶44}** Mr. Little next contends his detention was unconstitutional because it was impermissibly prolonged. "'When detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. * * * This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. * * * "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation."'" *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 12, quoting *State v. Howard*, 12th Dist. Preble Nos. CA2006-02-002 and CA2006-02-003, 2006-Ohio-5656, ¶ 15, quoting *State v. Carlson*, 102 Ohio App.3d 585, 598-599, 657 N.E.2d 591 (9th Dist.1995).

**{¶45}** In addition, "an exterior sniff by a trained narcotics dog to detect the presence of contraband does not constitute a search under circumstances in which a vehicle has been lawfully detained." *State v. Melone*, 11th Dist. Lake No. 2009-L-047, 2009-Ohio-6710, ¶ 58; *see Illinois v. Caballes*, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). Thus, "[a] traffic stop is not unconstitutionally prolonged when permissible background checks have been diligently undertaken and not yet completed at the time a drug dog alerts on the vehicle." *Batchili* at ¶ 14.

**{¶46}** Even if a detention is "actually prolonged by the request for a dog search, 'the detention of a stopped driver may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop.'" *Id.* at ¶ 15, quoting *Howard*

12

at ¶ 16. "Once it is determined that a delay occurred for the sole purpose of conducting a K-9 'sniff,' the question is not whether the delay was undue, but whether the delay was supported by a reasonable, articulable suspicion of drug activity." *Eggleston* at ¶ 28.

{¶47} The testimony from the suppression hearing does not indicate Mr. Little's detention was "artificially prolonged," as Mr. Little contends. At the suppression hearing, Officer Kennedy testified that the canine unit arrived within ten minutes or less. Mr. Little's argument relies on body camera footage that was admitted during trial; however, it was not before the trial court when it considered Mr. Little's motion to suppress. "An appellate court may consider only evidence that was presented during the suppression hearing and may not consider evidence presented at trial." *State v. Monford*, 190 Ohio App.3d 35, 2010-Ohio-4732, 940 N.E.2d 634, ¶ 45 (10th Dist.). Even if Mr. Little's detention was delayed to permit the canine unit's arrival, any such delay was supported by reasonable, articulable suspicion of drug activity, i.e., Sgt. Graham's prior observation of a possible hand-to-hand drug transaction in the hotel parking lot.

{¶48} In sum, the traffic stop and the detention were both constitutionally permitted under existing precedent. Accordingly, the trial court did not err in overruling Mr. Little's motion to suppress.

{¶49} Mr. Little's first assignment of error is without merit.

### Sufficiency of the Evidence

{¶50} In his second assignment of error, Mr. Little contends his convictions were not supported by sufficient evidence.

{¶51} "'"Sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally

13

Case Nos. 2023-P-0011 and 2023-P-0012

sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Id.* "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13.

**{¶52}** "[W]hen conducting a sufficiency of the evidence analysis, this court is to look at the actual evidence admitted at trial, both admissible and inadmissible." *State v. Rose*, 11th Dist. Lake No. 2014-L-086, 2015-Ohio-2607, ¶ 34. In addition, "the claim of insufficient evidence invokes a question of due process, the resolution of which does not allow for a weighing of the evidence." *Id.* at ¶ 33.

### *Aggravated Trafficking*

**{¶53}** Mr. Little contends the state presented insufficient evidence to convict him of three counts of aggravated trafficking in drugs in violation of R.C. 2925.03, which provides, in relevant part, "No person shall knowingly * * * [s]ell or offer to sell a controlled substance or a controlled substance analog * * *." R.C. 2925.03(A)(1).

14

{¶54} For all three controlled buys, Mr. Little contends the state presented "no evidence" of the alleged conversations between himself and the C.I. regarding possible drug transactions. For the first buy, Mr. Little also contends Sgt. Graham did not witness the transaction, and Mr. Little was not the only person present in the mobile home.

{¶55} The C.I.'s testimony implicated Mr. Little's direct involvement, and the C.I.'s testimony constituted "evidence." Mr. Little cites no authority indicating the C.I.'s testimony was required to be corroborated, and we have not located any such authority. *See State v. Some*, 2d Dist. Montgomery No. 28106, 2019-Ohio-3399, ¶ 14. Whether the C.I.'s testimony was *believable* involves the C.I.'s credibility and the weight of the evidence, not sufficiency. "On review for sufficiency, courts are to assess *not* whether the state's evidence *is to be believed*, but whether, *if believed*, the evidence against a defendant would support a conviction." (Emphasis added.) *Thompkins*, *supra*, at 390 (Cook, J., concurring). In addition, Sgt. Graham testified he was able to identify Mr. Little from a screen capture of the video recording for the first controlled buy.

{¶56} For the second buy, Mr. Little contends that even though the C.I. testified regarding his presence, an unidentified person exchanged the drugs for money through the apartment window. For the third buy, Mr. Little contends there was "absolutely no evidence" of his involvement. Rather, Ms. Haney overheard Mr. Little's conversation and sold the drugs of her own volition.

{¶57} The C.I.'s testimony, if believed, was sufficient to establish Mr. Little's convictions under two independent theories. First, the offense of aggravated trafficking in drugs encompasses both *selling* and *offering to sell* a controlled substance. *See* R.C.

15

2925.03(A)(1). Thus, the C.I.'s testimony, if believed, was sufficient to establish, at the very least, Mr. Little *offered to sell* methamphetamine during the second and third buys.

{¶58} Second, the trial court instructed the jury on the law of complicity. Ohio's complicity statute, R.C. 2923.03, provides, in relevant part, "No person, acting with the kind of culpability required for the commission of an offense, shall * * * (1) [s]olicit or procure another to commit the offense; [or] (2) [a]id or abet another in committing the offense * * *." R.C. 2929.03(A)(1) and (2).[1] "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus.

{¶59} The C.I. testified that Mr. Little arranged the second and third buys. For the second buy, Mr. Little told the C.I. exactly where to go at the apartment complex. For the third buy, Ms. Haney confirmed she was Mr. Little's "people." Further, Ms. Haney testified that she overheard Mr. Little making arrangements, and she volunteered to participate in order to "get high." This evidence, if believed, was sufficient to support an inference that Mr. Little solicited, procured, aided, or abetted the unidentified person in the window and Ms. Haney in selling methamphetamine during the second and third buys.

---

1. Although the indictment did not reference complicity, "[a] charge of complicity may be stated in terms of [R.C. 2903.03], or in terms of the principal offense." R.C. 2903.03(F).

16

Case Nos. 2023-P-0011 and 2023-P-0012

### *Aggravated Possession*

**{¶60}** Mr. Little next contends the state presented insufficient evidence to convict him of aggravated possession of drugs in violation of R.C. 2925.11, which provides, in relevant part, "No person shall *knowingly* obtain, *possess*, or use a controlled substance or a controlled analog." (Emphasis added.) R.C. 2925.11(A).

**{¶61}** "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B).

**{¶62}** "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).

**{¶63}** Possession can be either actual or constructive. *State v. Fogle*, 11th Dist. Portage No. 2008-P-0009, 2009-Ohio-1005, ¶ 28. "'Constructive possession exists when an individual is able to exercise dominion or control over an item, even if the individual does not have the item within his immediate physical possession.'" *State v. Hudson*, 2018-Ohio-133, 104 N.E.3d 25, ¶ 47 (11th Dist.), quoting *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.). To prove constructive

17

possession, "[i]t must also be shown that the person was conscious of the presence of the object." *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1982).

**{¶64}** Constructive possession may be supported solely by circumstantial evidence. *Fogle* at ¶ 30. Circumstantial evidence is the proof of facts by direct evidence from which a factfinder may reasonably infer the existence of other facts. *State v. Pistillo*, 11th Dist. Lake No. 2003-L-183, 2004-Ohio-6333, ¶ 20. "Circumstantial evidence and direct evidence inherently possess the same probative value," and "[i]n some instances certain facts can only be established by circumstantial evidence." *Jenks*, *supra*, at 502. For instance, "[a]bsent an admission by a defendant or direct testimony by another with knowledge, the defendant's knowledge of the presence of illegal drugs where the crime charged is possession of drugs often must be proven via circumstantial evidence * * *." *Hudson* at ¶ 48.

**{¶65}** Mr. Little contends the state presented "absolutely no evidence" that he possessed the large amount methamphetamine discovered under the hood of the vehicle he was driving. We disagree.

**{¶66}** The testimony indicates that the Drug Task Force was conducting an interdiction operation focused on hotels, and Mr. Little arrived. Sgt. Graham witnessed Mr. Little appear to engage in a transaction with two women from the hotel. A member of the task force indicated Mr. Little was known to keep methamphetamine under the hood of his vehicle. When the police subsequently searched the vehicle Mr. Little was driving, they discovered methamphetamine under the hood. Although Mr. Little did not own the vehicle, Ms. Brode had given him permission to drive it. As the driver, Mr. Little would have had sole access to the vehicle's hood release. When this circumstantial evidence

18

is viewed in a light most favorable to the state, it was sufficient to establish Mr. Little constructively possessed the methamphetamine.

{¶67} In sum, the state presented sufficient evidence, if believed, to prove beyond a reasonable doubt that Mr. Little committed three counts of aggravated trafficking in drugs and one count of aggravated possession of drugs.

{¶68} Mr. Little's second assignment of error is without merit.

### Joinder and Severance

{¶69} In his third and final assignment of error, Mr. Little contends the trial court erred in allowing joinder and failing to sever his two indictments for trial.

### *Crim.R. 8(A) and 13*

{¶70} "'The law favors joining multiple criminal offenses in a single trial.'" *State v. Gordon*, 152 Ohio St.3d 528, 2018-Ohio-259, 98 N.E.3d 251, ¶ 18, quoting *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991). "This is because joint trials 'conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.'" *Id.*, quoting *Bruton v. United States*, 391 U.S. 123, 134, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Pursuant to Crim.R. 13, "[t]he court may order two or more indictments or informations or both to be tried together, if the offenses * * * could have been joined in a single indictment or information." Crim.R. 8(A) provides the standards for determining whether separate offenses can be charged in the same indictment:

{¶71} "Two or more offenses may be charged in the same indictment * * * if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts

19

or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

{¶72} Even if indictments are initially correctly joined under Crim.R. 8(A) and 13, a trial court should order separate trials pursuant to Crim.R. 14 if it appears the defendant is prejudiced by the joinder. *Gordon* at ¶ 20. Crim.R. 14 provides in relevant part:

{¶73} "If it appears that a defendant or the state is prejudiced by a joinder of offenses * * * in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts * * * or provide such other relief as justice requires."

{¶74} Mr. Little has not set forth an argument based on Crim.R. 8(A) and 13 asserting that the trial court improperly joined his indictments. Therefore, we consider his third assignment of error solely in relation to severance under Crim.R. 14.

### Crim.R. 14

{¶75} This court generally reviews a trial court's denial of a motion to sever under an abuse of discretion standard. *State v. Shannon*, 11th Dist. Lake No. 2017-L-092, 2019-Ohio-421, ¶ 50. However, when a defendant fails to renew a motion to sever at the conclusion of the presentation of all of the evidence at trial, it is waived, and the matter is reviewed for plain error. *State v. Jackson*, 11th Dist. Lake No. 2017-L-140, 2018-Ohio-3241, ¶ 22.

{¶76} Here, Mr. Little filed a motion for severance and relief from prejudicial joinder pursuant to Crim.R. 14 a few days before trial. However, it appears defense counsel abandoned that motion on the first day of trial. Specifically, the trial court stated its belief that it had already considered the issue months ago by granting the state's

20

motion for joinder, and defense counsel agreed. Defense counsel also did not renew its motion for severance at the conclusion of the presentation of all of the evidence. Rather, defense counsel reasserted the issue of prejudice over two weeks later in a motion for a new trial. Thus, Mr. Little has waived all but plain error.

{¶77} To establish plain error, a defendant must show an error that constitutes an obvious defect in the trial proceedings and demonstrate that the error affected the outcome of the trial. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶78} "When a defendant claims that joinder is improper, he must affirmatively show that his rights have been prejudiced." *State v. Quinones*, 11th Dist. Lake No. 2003-L-015, 2005-Ohio-6576, ¶ 38. "The accused must provide the trial court with sufficient information demonstrating that he would be deprived of the right to a fair trial if joinder is permitted." *Id.* "The state may negate the defendant's claim of prejudice by demonstrating either of the following: (1) that the evidence to be introduced relative to one offense would be admissible in the trial on the other, severed offense, pursuant to Evid.R. 404(B); or (2) that, regardless of the admissibility of such evidence, the evidence relating to each charge is simple and direct." *Id.* at ¶ 39. "The former is generally referred to as the 'other acts test,' while the latter is known as the 'joinder test.'" *Id.*, quoting *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990).

{¶79} Mr. Little contends that the "other acts test" is not met. However, since Mr. Little did not properly assert his motion to sever, the trial court did not engage in any

21

"other acts" analysis under Evid.R. 404(B). We decline to do so for the first time on appeal because the record indicates the less stringent "joinder test" is met. Evidence is considered simple and direct when "the jury is believed capable of segregating the proof on each charge." *State v. Roberts*, 62 Ohio St.2d 170, 175, 405 N.E.2d 247 (1980). Here, each of Mr. Little's charges involved different dates, locations, and actions. In addition, Mr. Little's alleged conduct in committing the aggravated trafficking offenses, i.e., selling methamphetamine to the C.I. on three occasions, was separate and distinct from his alleged conduct in committing the aggravated possession offense, i.e., concealing methamphetamine under the hood of the vehicle he was driving. Accordingly, Mr. Little has not established plain error with respect to the trial court's failure to sever his indictments for trial.

{¶80} Mr. Little's third assignment of error is without merit.

{¶81} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed.

EUGENE A. LUCCI, J.,

ROBERT J. PATTON, J.,

concur.

22