[Cite as *Conneaut v. Wick*, 2024-Ohio-4452.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| CITY OF CONNEAUT, | CASE NO. 2024-A-0001 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Conneaut Municipal Court |
| FRANCIS J. WICK, | |
| Defendant-Appellant. | Trial Court No. 2023 CRB 00309 |

**O P I N I O N**

Decided: September 9, 2024
Judgment: Affirmed

*John D. Lewis*, Law Director, City of Conneaut, 294 Main Street, Conneaut, OH 44030 (For Plaintiff-Appellee).

*Margaret Brunarski*, Ashtabula County Public Defender, and *Michael J. Ledenko*, Assistant Public Defender, 22 East Jefferson Street, Jefferson, OH 44047 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1}  Appellant, Francis J. Wick ("Wick"), appeals the decision of the Conneaut Municipal Court, sentencing him to five years of unsupervised community control, a fine of $150, payment of court costs, and 30 days of suspended jail time on the condition that he complete an anger management course and remove "defamatory language" from the back of his vehicle. Appellant asserts that the condition of community control requiring that he remove defamatory language from the back of his vehicle is unconstitutional. For the following reasons, we affirm.

**{¶2}** This case arises from events that occurred on October 27, 2023. Wick was on Conneaut High School property using vulgar and offensive language in the presence of High School staff members and students. Wick admitted to the trial court that he used profanity towards staff and officials that day. Wick was on the property because he had dropped off his daughter but was later told to return and pick her up. Wick was angry that his daughter had been suspended from school, and there was some confusion about when she was able to return. After shouting profanities at teachers and officials, Wick squealed his tires and left the High School. When Wick arrived at his nearby home, officers were there waiting for him. Wick continued to shout profanities at officers out the windows of his home. On October 30, 2023, Wick again was at Conneaut High School, where Officer Rose was also present, and he shouted profanity at faculty and Officer rose, and again drove off.[1]

**{¶3}** Officer Timothy Rose ("Officer Rose") was present during the October 27, 2023, incident. During Sentencing, Officer Rose advised the trial court that sometime after the incident at the High School and Wick's home, he discovered the words "F Officer Rose" written in metal paint pen on the back of Wick's vehicle. Wick stated at sentencing that his daughter had written the statement on a 1996 Ford Explorer that he owned.

**{¶4}** Wick was charged with Aggravated Disorderly Conduct (Case No. 23CRB00309-A), Disorderly Conduct (Case Do. 23CRB00310-A), and Reckless Operation of a Motor Vehicle (Case No. 23TRD00786) under the City of Conneaut's ordinances. Wick entered a plea of no contest to the Aggravated Disorderly Conduct and

---

1. The incident occurring on October 30, 2023, was the basis of the second disorderly conduct charge (Case No. 23CRB00310-A). This appeal concerns the first, aggravated disorderly conduct charge occurring on October 27, 2023 (Case No. 23CRB00309-A).

2

Disorderly Conduct charges, and Reckless Operation count was dismissed. On the Disorderly Conduct charge, the trial court fined Wick $100. On the Aggravated Disorderly Conduct count, the trial court sentenced Wick to thirty days in jail, suspended, five years of unsupervised community control, and a $150 fine. The trial court further added the conditions that Wick attend anger management treatment and remove the "defamatory" statement regarding Officer Rose from his vehicle. Wick's appeal to this Court only pertains to the sentence imposed for the Aggravated Disorderly Conduct charge.

{¶5} Wick's sole assignment of error states: "The trial court committed prejudicial error by incorrectly determining the content of a written message to be defamatory and ordering Wick to delete that message as a condition of suspended incarceration."

## Defamation

{¶6} As an initial matter, this Court looks to the statement giving rise to Wick's constitutionality-based assignment of error. Wick contends that the trial court incorrectly determined the language written on the back of Wick's vehicle to be defamatory. However, the trial court did not make such a finding. During sentencing, the trial court stated, "I order that you remove from your 1996 Ford Explorer the defamatory language against Officer Rose * * *. I'm going to give you * * * two weeks to do that."

{¶7} The Merriam-Webster dictionary defines defamation as "the act of communicating false statements about a person that injure[s] the reputation of that person."[2] The common meaning of the word "defamatory" is generally understood, in its normative usage, as language that is negative in nature directed at a specific person that

---

2. *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/defamatory (accessed June 18, 2024).

3

diminishes their reputation. It appears from the sentencing transcript that the trial court used the word in a descriptive sense simply to characterize the statement regarding Officer Rose, rather than making a legal conclusion as to the nature of the statement. The trial court could have supplanted the word "defamatory" with any number of alternative words without any bearing on Wick's sentence. Accordingly, we conclude that Wick's assignment of error is predicated on an inaccurate assertion that the trial court determined that the statement on his Explorer was defamatory in nature when a plain reading of the record demonstrates otherwise.

### Constitutionality of Wick's Probation Condition

{¶8}    A further review of the record reveals that Wick did not object to the constitutionality of his probation conditions. His failure to do so below waived all but plain error review on appeal. Crim.R. 52(B).

{¶9}    This Court has previously addressed instances where a criminal defendant raises a constitutional objection to a sentence for the first time on appeal. Specifically, this Court has held, "[e]ven where waiver is clear, constitutional challenges may be heard for the first time on appeal if the court exercises its discretion to do so 'in specific cases of plain error where the rights and interests involved may warrant it.'" *State v. George*, 2021-Ohio-476, ¶ 14, quoting *In re M.D.*, 38 Ohi St.3d 149 (1988).

{¶10}    "Courts are cautioned 'to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." ' " *State v. Walker*, 2023-Ohio-2725, ¶ 39 (11th Dist.) quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 27. "To establish plain error, a defendant must show an error that constitutes an obvious defect in the trial proceedings and demonstrate that the error affected the

4

outcome of the trial." *State v. Little*, 2023-Ohio-4098, ¶ 77 (11th Dist.), citing *State v. Rogers*, 2015-Ohio-2459, ¶ 22. Therefore, absent a manifest miscarriage of justice, an appellate court may not consider a constitutional issue presented for the first time on appeal.

{¶11} It appears that a challenge to the constitutionality of a condition of community control requiring an appellant to remove language from his vehicle or other property under his or her control is a case of first impression in Ohio. However, this case resembles another case of first impression decided by this Court, *George*, 2021-Ohio-476. In *George*, this Court declined to review a constitutional challenge to a community control condition, under a plain error analysis, requiring the defendant to write an apology letter to the victim.

{¶12} The dissent takes issue with our reliance on *George* to decline review as "the condition we consider in this case is suppression of speech made by a third party which is untethered from any criminal act." The dissent's analysis actually supports our conclusion to decline review as it identifies a question of standing regarding the source of the speech at issue. The record reflects that Wick made an unsworn statement at sentencing that Wick's daughter, a non-party, wrote the statement on his vehicle. Appellant's role appears to be limited to owning the vehicle upon which the written statement was made.

{¶13} Wick did not object to the constitutionality of his sentence in the trial court. Wick's claim does not rise to the level of constitutional plain error that warrants review as the trial court's sentence did not result in a manifest miscarriage of justice. *Walker*, supra. This Court does not condone such language directed at police officers. However, the

5

doctrine of plain error coupled with the question of standing requires us to decline reviewing the merits as framed by appellant. Accordingly, we find Wick's constitutional error to be without merit as his objection in this regard was not preserved for appeal and appellate review is not required to prevent a manifest miscarriage of justice.

{¶14} Wick's sole assignment of error is without merit.

{¶15} For the foregoing reasons, this appeal is affirmed.

MARY JANE TRAPP, J., concurs,

JOHN J. EKLUND, J., dissents with a Dissenting Opinion.

---

JOHN J. EKLUND, J., dissents with a Dissenting Opinion.

{¶16} I respectfully dissent.

{¶17} Appellant behaved badly at his daughter's school. So badly that it prompted local law enforcement (one of whom was present at the school and observed the misbehavior) to press a complaint charging him with assorted violations of Conneaut Municipal Ordinances. He pled no contest to two of them.

{¶18} There is no question that, after his offensive conduct, *his daughter* wrote on the back of Appellant's car an unbecoming, disrespectful comment about the law enforcement witness to his misbehavior. Sometime later, the complaining law enforcement witness saw it. At sentencing, the trial court commanded Appellant to

6

remove the offending language from the car as a condition of the community control to which it sentenced Appellant. He appeals, claiming that the trial court erred in doing so.

{¶19} This case presents a serious question, to wit: what, if any, are the limits on obligations a court may impose on a defendant sentenced to community control?

**Failure to Object:**

{¶20} Typically, a failure to object to a sentencing error at the trial court waives all but plain error. *State v. Awan*, 22 Ohio St.3d 120, (1986); *State v. Devai*, 2013-Ohio-5264, ¶ 16 (11th Dist.). However, even where the waiver is clear, the court may exercise its discretion to hear constitutional challenges for the first time on appeal "in specific cases of plain error or where the rights and interests involved may warrant it." *In re M.D.*, 38 Ohio St.3d 149 (1988), syllabus; *State v. Weaver*, 2014-Ohio-1371, ¶ 12 (11th Dist.).

{¶21} I believe this case warrants the exercise of our discretion to review this error despite Appellant's failure to object at the trial court.

{¶22} The majority likens this case to *State v. George*, 2021-Ohio-476 (11th Dist.) to justify similarly declining to review the issue before us. However, that comparison is inapt for two reasons. First, in *George*, the appellant failed to object to the trial court's sentence requiring him to write an apology letter as a condition of his community control. However, the community control condition before us is not like ordering someone (as a condition of community control) to apologize to a victim for a criminal act. In contrast, the condition we consider in this case is a suppression of speech made by a third party and which is untethered from any criminal act.

{¶23} Second, the defendant in *George* argued the apology requirement was unconstitutional, however, he did not cite "any authority in support of this proposition." *Id.*

7

at ¶ 16. We cited App.R.16(A)(7), noting that an appellant's brief failed to "include an argument containing the contentions of the appellant with respect to each assignment of error . . . with citations to the authorities . . . on which appellant relies." It was only because of this procedural failure, and because the issue was one of first impression in Ohio, that we declined to exercise our discretion to address the issue on appeal. *Id.* at ¶ 17. This Appellant has supplied ample authority on which to consider his arguments.

**Review of Community Control Conditions:**

{¶24} While a trial court has discretion "in imposing conditions" of community control, that discretion "is not limitless." *State v. Jones*, 49 Ohio St.3d 51 (1990). Community control sanctions "cannot be overly broad so as to unnecessarily impinge upon the probationer's liberty." *Id.* The standard of review for a trial court's imposition of community control sanctions is for an abuse of discretion. *State v. Talty*, 2004-Ohio-4888, ¶ 10. The community control sanction must be reasonably related to the probationary goals of doing justice, rehabilitating the offender, and insuring good behavior. *Id.* at ¶ 12.

{¶25} "When sentencing a misdemeanor offender to community control, a trial court may impose residential, nonresidential, and financial sanctions and any other conditions the trial court considers appropriate. R.C. 2929.25(A)(1)(a) and (b)." *State v. Bourne*, 2023-Ohio-2832, ¶ 17 (11th Dist.). R.C. 2929.27 sets forth specific nonresidential sanctions a trial court may impose, including "any other sanction that is intended to discourage the offender or other persons from committing a similar offense if the sanction is reasonably related to the overriding purposes and principles of misdemeanor sentencing." R.C. 2929.27(C).

8

Case No. 2024-A-0001

{¶26} To determine whether a community control sanction is an abuse of discretion, a reviewing court must consider whether the sanction: "(1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *Jones* at 53. "All three prongs must be satisfied for a reviewing court to find that the trial court did not abuse its discretion." *Bourne* at ¶ 20.

{¶27} Although the narrow issue before us appears to be one of first impression, Ohio case law demonstrates that the above standard is appropriate to assess whether a community control sanction implicating a fundamental right is a reasonable sanction. *See Jones* at 51 (whether the trial court abused its discretion by "imposing as a condition of probation that this defendant 'have no association or communication, direct or indirect, with anyone under the age of eighteen (18) years not a member of his immediate family.'"); *Talty*, 2004-Ohio-4888, ¶ 18-25 (whether the trial court can lawfully order that, as a condition community control, "the defendant may not impregnate a woman while under supervision.").

{¶28} Applying the *Jones* three-prong test to the matter before us, I would find that the trial court did abuse its discretion by ordering appellant to remove the message from his car.

{¶29} First, I fail to see how the community control condition could be reasonably related to rehabilitating Appellant because Appellant was not the one who put the message on the car. The condition has no redemptive value. The question of whether appellant should have such a message on his car is a separate question from whether

9

the court should order its removal. The best that may be said for the condition is that Appellant might learn not to let his daughter write such things on his car. Or, it might teach Appellant to raise his children to respect police officers. But a failure to respect law enforcement (however odious that may be) is not criminal. Appellant's rehabilitation does not require that he respect Officer Rose. In the end, the goal of a community control sanction cannot be to ensure that defendants, like Winston from George Orwell's 1984, "must love Big Brother."[3]

{¶30} Second, the condition is not related to the crime for which Appellant was convicted. Appellant was convicted for using "vulgar and offensive language in the presence of students" and "staff members" at the Conneaut High School. The message "F Officer Rose" is not vulgar or profane on its face. The condition can only be said to be related to the crime insofar as Appellant's daughter wrote the message, but we do not even know why she did so (although the reference to it in the record seems to indicate it was related to Officer Rose arresting Appellant). I do not believe such a tenuous relationship satisfies *Jones'* second prong.

{¶31} Third, the condition does not relate to conduct that is criminal, or reasonably related to Appellant's future criminality. Again, he did not write it, and, as the majority explains, the message is not defamatory in a legal sense. Its mere presence on the car certainly does not rise to the level of disorderly conduct or any other criminal violation. Apparently, it bothers Officer Rose (apparently not enough to have informed the prosecutor or the court of it until sentencing). It bothers me, too. But, the expression of

---

3. George Orwell, *1984*, (New York: Harper Collins, 1977), 388.

Case No. 2024-A-0001

that opinion – disrespectful as it may be – cannot be said to be reasonably related to Appellant's future criminality.

{¶32} Because the community control sanction fails to satisfy each of the three prongs of the *Jones* test, I would hold that the trial court abused its discretion by imposing the condition to remove the message "F Officer Rose" from Appellant's car.

11

Case No. 2024-A-0001