[Cite as *State v. Goldner*, 2024-Ohio-1854.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2023-T-0071 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the<br>Court of Common Pleas |
| JEFFREY GOLDNER, JR., | |
| Defendant-Appellant. | Trial Court No. 2023 CR 00213 |

# O P I N I O N

Decided: May 13, 2024
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Ryan J. Sanders*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*John P. Laczko*, John P. Laczko, LLC, City Centre One, Suite 975, 100 East Federal Street, Youngstown, OH 44503 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Jeffrey Goldner, Jr. ("Mr. Goldner"), appeals from the judgment of the Trumbull County Court of Common Pleas sentencing him to 30 months in prison following a jury trial in which he was found guilty of failure to comply with an order or signal of a police officer, a third-degree felony.

{¶2} Mr. Goldner raises four assignments of error, contending (1) the trial court erred by denying his Crim.R. 29(A) motion for acquittal; (2) the jury's verdict is against the manifest weight of the evidence; (3) the trial court erred by overruling his motion for a

mistrial based on his courtroom outburst; and (4) his conviction should be reversed based on cumulative error.

{¶3}    After a careful review of the record and pertinent law, we find as follows:

{¶4}    (1)  The trial court did not err by denying Mr. Goldner's Crim.R. 29(A) motion for acquittal.  The state presented sufficient circumstantial evidence, if believed, to prove Mr. Goldner was the person who committed the offense of failure to comply.

{¶5}    (2)  Mr. Goldner has failed to adequately develop an argument to establish that the jury's verdict is against the manifest weight of the evidence.

{¶6}    (3)  The trial court did not err by overruling Mr. Goldner's motion for a mistrial based on his courtroom outburst.  Courts have found similar outbursts to constitute invited error.  Further, the trial court appropriately addressed the incident with the jury, and there is no indication Mr. Goldner was prejudiced.

{¶7}    (4)  Since we have found no errors, much less multiple errors, the doctrine of cumulative error is not applicable.

{¶8}    Thus, Mr. Goldner's assignments of error are without merit, and we affirm the judgment of the Trumbull County Court of Common Pleas.

## Substantive and Procedural History

{¶9}    On the evening of March 21, 2023, Officer Wert of the Howland Police Department ("Howland PD") was sitting stationary in his patrol car near Elm Road in Howland Township while training a new officer.  At about 9:30 p.m., he observed a white male driving a large red pickup truck northbound on Elm Road at an extremely high rate of speed.  He noticed the truck was an older model and had two tailpipes extending from the rear, multiple stickers on the back window, and a bumper sticker on the rear tailgate.

2

Officer Wert pulled out onto Elm Road, activated his lights and siren, and attempted to initiate a traffic stop. According to Officer Wert, he observed the driver commit several other traffic violations, including running red lights, failing to use turn signals, passing other northbound vehicles, and traveling into the southbound lanes.

{¶10} Officer Jones of the Howland PD also observed the red pickup truck driving at a high rate of speed on Elm Road. He noticed the truck was an older GMC Sierra or Chevrolet Silverado and had two exhaust pipes hanging from the back. Officer Jones activated his lights, began following the vehicle, and eventually activated his siren. He observed the truck cross the center line into other lanes of travel.

{¶11} Officer Brancaccio of the Howland PD was the third officer to observe the red pickup truck driving at a high rate of speed on Elm Road. While following the truck, he activated his dash-mounted radar unit and clocked it as driving 85 m.p.h. in the 40 m.p.h. zone.

{¶12} The officers followed the truck for about a mile, at which time Officer Wert terminated the pursuit for safety concerns. He alerted the Cortland and Bazetta police units that the truck was heading into their jurisdictions. The truck was last seen turning left onto Warren-Meadville Road in Bazetta Township.

{¶13} Officer Dzurinda of the Bazetta Township Police Department ("Bazetta PD") was on patrol when dispatch requested that he assist Howland PD in pursuing a red truck, possibly a GMC. After being told of the truck's last location, Officer Dzurinda decided to check the nearby Larry Lane trailer park, an area from which the Bazetta PD receives many service calls. As he drove down Larry Lane, a woman who appeared to be out for a walk flagged him down and told him a red truck had just driven by at a high rate of

3

speed. While speaking to her, Officer Dzurinda heard screaming and yelling and proceeded toward that area.

{¶14} Upon the officer's arrival, Mr. Goldner appeared from behind a red GMC truck and angrily approached him. Officer Dzurinda ordered Mr. Goldner to get back and stop approaching. Mr. Goldner closed his fists and screamed, "No, f*ck you!" Officer Dzurinda deployed his taser into Mr. Goldner's abdomen, ordered him to lie on his stomach, and radioed dispatch for assistance.

{¶15} Officer Rice of the Cortland Police Department arrived at the scene, handcuffed Mr. Goldner, and placed him in the back of Officer Dzurinda's patrol car. While in the car, Mr. Goldner was extremely aggressive, kicking the door, thrashing his body around, and verbally threatening officers. Paramedics arrived and removed the taser probes from Mr. Goldner's abdomen. Officer Rice's body and dash cameras recorded Mr. Goldner's arrest.

{¶16} Officers Wert and Jones arrived at the scene, and both recognized Mr. Goldner's truck as the vehicle they had pursued on Elm Road. Officer Wert read Mr. Goldner his *Miranda* rights and questioned him through the car window. Mr. Goldner stated he was driving home from Reghetti's, which is a bar located on Elm Road in Warren. He had asked the bartender to go home with him, but she declined, at which time he became upset. He stated, however, that he could have been driving only 70 m.p.h. Officer Wert asked Mr. Goldner why he did not stop when the officer "lit him up," i.e., activated his lights and siren. Mr. Goldner laughed and responded, "Why would I?" but that he meant "no disrespect." He also stated he did not see the officer's lights. Officer Wert's body camera recorded his conversation with Mr. Goldner.

4

{¶17} Officer Dzurinda transported Mr. Goldner to the Trumbull County jail. On the way, the officer asked him why he ran from Howland PD, and Mr. Goldner replied, "Why would I stop?" and "Wouldn't you have ran?"

{¶18} The Trumbull County Grand Jury indicted Mr. Goldner for failure to comply with an order or signal of a police officer, a third-degree felony, in violation of R.C. 2921.331(B), (C)(1), and (C)(5)(a)(ii). The state alleged that Mr. Goldner's operation of the vehicle caused a substantial risk of serious physical harm to persons or property, which elevated the offense from a first-degree misdemeanor. Mr. Goldner pleaded not guilty.

{¶19} The matter was tried to a jury over two days. The state presented testimony from Officers Brancaccio, Jones, Wert, Dzurinda, and Rice and the radio dispatcher. The state's exhibits included photos and the officers' body camera video.

{¶20} The trial transcript indicates that while Officer Rice's bodycam video was playing for the jury, the following incident occurred:

{¶21} "[MR. GOLDNER]: That man came to my house pounding on the door while I'm taking a shit. Pounding on the door while I'm taking a shit. And that's why I was irate.

{¶22} "THE COURT: Please remove the Defendant.

{¶23} "[MR. GOLDNER]: Why they had no real evidence at all. I apologize, Ross. I know the position they take. The position that they take. 'Cause you and I both know this wasn't going well. Come on. We'll postpone this and I'll see you all in a few days. There will be no deals made. That's for sure."

{¶24} Mr. Goldner was removed from the courtroom, and the jury was excused. Counsel and the trial court then discussed on the record how best to proceed. The state

5

described Mr. Goldner's outburst as "threatening," "hostile," and "unnerving." The trial court described it as "probably one of the most violent outbursts I've ever seen in a courtroom" and stated "[t]here was no doubt that he would have gotten aggressive had he had the opportunity to."

{¶25} The parties discussed the possibility of outfitting Mr. Goldner with a stun vest under his jacket, which turned out to be unavailable. Defense counsel moved for a mistrial, which the trial court overruled, determining it would instead voir dire the jury.

{¶26} The trial court brought in the jury and advised them that trial would break for the day and that while matters often get heated in the courtroom, it was a safe place. The trial court asked if everybody was okay, and juror no. 3 shook her head "no." The trial court spoke with juror no. 3 separately and dismissed her from the jury upon her request, seating the alternate juror in her place.

{¶27} The next day, the trial court informed Mr. Goldner outside of the jury's presence that his outburst was unacceptable and that another one would cause his immediate removal from the trial. The trial court brought in the jury and instructed them to disregard the incident and not consider it for any reason.

{¶28} Following the state's case-in-chief, the defense moved for acquittal pursuant to Crim.R. 29(A), which the trial court overruled. The defense rested without presenting evidence or exhibits and renewed its Crim.R. 29(A) motion for acquittal, which the trial court overruled.

{¶29} Following deliberations, the jury returned a guilty verdict and found that Mr. Goldner's operation of the motor vehicle caused a substantial risk of serious physical

6

harm to persons or property. The trial court ordered an "expedited records check" and set the matter for sentencing.

{¶30} At sentencing, the trial court sentenced Mr. Goldner to 30 months in prison. The trial court subsequently filed a judgment entry memorializing the jury's verdict and Mr. Goldner's sentence.

{¶31} Mr. Goldner appealed and raises the following four assignments of error:

{¶32} "[1.] The trial court erred as a matter of law and to the prejudice of appellant by denying appellant's motion for acquittal as insufficient evidence was presented at trial to support a guilty verdict.

{¶33} "[2.] The trial court denied appellant due process under the Fourteenth Amendment due to the fact his conviction for aggravated murder was against the manifest weight of the evidence and the jury's verdict was inconsistent with the evidence and testimony presented at trial.

{¶34} "[3.] The trial court erred in denying appellant's motion for a mistrial.

{¶35} "[4.] The cumulative effect of multiple errors at trial, even if singularly insufficient to warrant reversal, together deprived appellant of a fair trial and his constitutional right to due process of law."

## Sufficiency of the Evidence

{¶36} In his first assignment of error, Mr. Goldner contends the trial court erred by denying his Crim.R. 29(A) motion for acquittal.

{¶37} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint,

7

if the evidence is insufficient to sustain a conviction of such offense or offenses." "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, ¶ 18.

{¶38} "'"Sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Id.* "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "[T]he claim of insufficient evidence invokes a question of due process, the resolution of which does not allow for a weighing of the evidence." *State v. Rose*, 11th Dist. Lake No. 2014-L-086, 2015-Ohio-2607, ¶ 33.

{¶39} Mr. Goldner notes that none of the testifying officers could positively identify him as the driver of the red pickup truck they pursued, nor did they obtain the truck's license plate number. Thus, it appears Mr. Goldner is arguing there was insufficient evidence to prove his identity as the perpetrator of the offense.

8

{¶40} In addition to each element of the offense, the state must prove the identity of the defendant as the perpetrator beyond a reasonable doubt. *State v. Sandercock*, 2018-Ohio-2448, 114 N.E.3d 262, ¶ 12 (11th Dist.); *see State v. Cook*, 65 Ohio St.3d 516, 526, 605 N.E.2d 70 (1992). Identity may be proven by circumstantial evidence. *Sandercock* at ¶ 12. "Circumstantial evidence involves proof of facts through direct evidence from which a factfinder may infer other facts in accordance with his or her common sense." *State v. Pistillo*, 11th Dist. Lake No. 2003-L-183, 2004-Ohio-6333, ¶ 20. "[W[hen a fact is established by circumstantial evidence, its existence may fairly and reasonably be inferred from other facts proved in the case." *Id.* "Circumstantial evidence and direct evidence inherently possess the same probative value * * *." *Jenks* at paragraph one of the syllabus.

{¶41} Here, the state presented sufficient circumstantial evidence, if believed, to prove Mr. Goldner was the driver of the truck. Officers Jones and Wert testified that the truck had particular physical characteristics, i.e., it was an older model red pickup with two tailpipes and multiple stickers. Mr. Goldner's truck on Larry Lane matched this description, and both officers testified it was the same vehicle. Mr. Goldner matched Officer Wert's description of the driver, and he and his truck were discovered near the driver's last known location. Officer Dzurinda testified that a woman notified him about a speeding red truck on Larry Lane. Officer Dzurinda also testified regarding Mr. Goldner's aggressive behavior toward him, which is indicative of guilt.

{¶42} Mr. Goldner's statements to the police also support the inference that he was the driver of the truck. He admitted to driving at least 70 m.p.h. on Elm Road while

9

angry, and his responses of "Why would I stop," "no disrespect," and "Wouldn't you have ran" suggest he was aware of the officers' lights and sirens and chose to disregard them.

{¶43} Mr. Goldner next notes that none of the testifying officers issued him any traffic citations following the vehicle pursuit. The nature of this argument is unclear. The issuance of a traffic citation is not a required element of a failure to comply offense. To the extent Mr. Goldner may be challenging the credibility of the officers' testimony, that involves the manifest weight of the evidence, not its sufficiency.

{¶44} Accordingly, Mr. Goldner's conviction was supported by sufficient evidence, and his first assignment of error is without merit.

**Manifest Weight of the Evidence**

{¶45} In his second assignment of error, Mr. Goldner contends the jury's verdict is against the manifest weight of the evidence.

{¶46} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury [or trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with

10

Case No. 2023-T-0071

the factfinder's resolution of the conflicting testimony." *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶47} "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

{¶48} Mr. Goldner contends that the jury's verdict is "clearly" contrary to the manifest weight of the evidence based on the factors in *State v. Mattison*, 23 Ohio App.3d 10, 490 N.E.2d 926 (8th Dist.1985), syllabus. However, Mr. Goldner does not specifically address any of those factors or apply them to the trial evidence. This court has no obligation to develop an argument on his behalf. Accordingly, Mr. Goldner has failed to establish that the jury's verdict is against the manifest weight of the evidence.

{¶49} Mr. Goldner's second assignment of error is without merit.

**Mistrial**

{¶50} In his third assignment of error, Mr. Goldner contends the trial court erred by overruling his motion for a mistrial based on his courtroom outburst.

Case No. 2023-T-0071

**{¶51}** "A trial court must declare a mistrial only 'when the ends of justice so require and a fair trial is no longer possible.'" *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 198, quoting *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). An appellate court reviews an order denying a motion for a mistrial for abuse of discretion. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001). An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

**{¶52}** Under the invited error doctrine, a defendant may not "'take advantage of an error which he himself invited or induced.'" *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, ¶ 279, quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co., Lincoln-Mercury Div.*, 28 Ohio St.3d 20, 502 N.E.2d 590 (1986), paragraph one of the syllabus. Courts have held that "the invited error doctrine precludes [the defendant] from taking advantage of any prejudice that resulted from his own 'outbursts and interruptions.'" *State v. Welninski*, 2018-Ohio-778, 108 N.E.3d 185, ¶ 74 (6th Dist.), quoting *State v. Gonzalez*, 4th Dist. Athens No. 97CA52, 1998 WL 823737, *5 (Nov. 18, 1998). *See also State v. McCollum*, 8th Dist. Cuyahoga No. 111370, 2023-Ohio-69, ¶ 12 ("[W]hen the defendant is the culprit of the emotional outburst, the issue falls under the invited error doctrine."); *State v. Hicks*, 9th Dist. Lorain No. 22CA011871, 2023-Ohio-3517, ¶ 21; *State v. Chambers*, 10th Dist. Franklin No. 99AP-1308, 2000 WL 963890, *5 (July 13, 2000).

**{¶53}** Even if we reviewed the merits of Mr. Goldner's third assignment of error, the trial court did not abuse its discretion. The trial court addressed the jury and spoke separately with one juror who was visibly upset. Upon the juror's request, the trial court

12

dismissed her. The trial court also issued a cautionary instruction informing the jury to disregard the incident for all purposes. There is nothing in the record indicating Mr. Goldner was prejudiced.

{¶54} Mr. Goldner's third assignment of error is without merit.

## Cumulative Error

{¶55} Finally, in his fourth assignment of error, Mr. Goldner contends his conviction should be reversed based on cumulative error.

{¶56} Under the doctrine of cumulative error, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial, even though each of the numerous errors does not individually constitute cause for reversal." *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 257. "[M]ultiple errors that are separately harmless may, when considered together, violate a person's right to a fair trial in the appropriate situation." *State v. Goff*, 82 Ohio St.3d 123, 140, 694 N.E.2d 916 (1998). Since we have found no errors, much less multiple errors, the doctrine is not applicable.

{¶57} Mr. Goldner's fourth assignment of error is without merit.

{¶58} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is affirmed.


EUGENE A. LUCCI, P.J.,

JOHN J. EKLUND, J.,

concur.


13

Case No. 2023-T-0071